AO 91 (Rev. 02/09) Criminal Complaint

# United States District Court
### for the
### Western District of New York

United States of America

v.

NICHOLAS TURNQUIST

*Defendant*

Case No. 20-mj-1156

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

Between on or about December 23, 2014 and on or about December 24, 2014, in the Western District of New York, and elsewhere, the defendant NICHOLAS TURNQUIST, did knowingly transport Victim, a person known to the government, an individual who had not attained the age of 18 years, in interstate commerce from New York to Pennsylvania, with the intent that such individual engage in sexual activity for which any person could be charged with a criminal offense in violation of Title 18, United States Code, Section 2423(a).

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*

RANDALL GARVER, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION
*Printed name and title*

Sworn to before me and signed telephonically.

Date: November 2, 2020

*Judge's signature*

City and State: Buffalo, New York

HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A COMPLAINT

### I. INTRODUCTION

I, Randall E. Garver, after being duly sworn, depose and state as follows:

1. I am a Special Agent of the Federal Bureau of Investigation and entered on duty in May 2006. I am currently assigned to the Buffalo Field Office and work on cases associated with the Violent Crimes Against Children program, which targets individuals involved in the online sexual exploitation of children. As part of these duties, I have become involved in the investigation of suspected violations of Title 18, United States Code, Sections 2251, 2252, 2252A, 2422, and 2423. I have also participated in various FBI mandated and volunteer training for the investigation and enforcement of federal child pornography laws in which computers are used as the means for receiving, transmitting, and storing child pornography.

2. I make this affidavit in support of a criminal complaint charging **NICHOLAS TURNQUIST** ("TURNQUIST"), with a violation of Title 18 U.S.C. Section 2423(a) [Transportation with Intent to Engage in Criminal Sexual Activity].

3. The statements contained in this affidavit are based on my involvement in this investigation, as well as information provided to me by other law enforcement officers in this investigation, and upon my training and experience as a Special Agent in the Buffalo Field Office of the FBI. Because this affidavit is being submitted for the limited purpose of seeking a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts necessary to establish probable cause to believe that TURNQUIST knowingly violated Title 18, United States Code 2423(a).

## II. PROBABLE CAUSE

4. On or about March 31, 2020, an Investigator with the Wyoming County Sheriff's Office (WCSO) called me to discuss their department's ongoing investigation of NICHOLAS TURNQUIST. The Investigator told me that in January 2012, law enforcement and Child Protective Services (CPS) received information from Pioneer Central School District that a then 13-year-old girl, hereinafter "Victim", was sexually abused by her stepfather, TURNQUIST. WCSO and CPS interviewed individuals at TURNQUIST's then-residence in Java, NY and were satisfied that the information was simply part of on-going bullying at school. The Investigator advised me that in February and March 2020, Victim (then 21 years old) provided several statements to East Aurora Police Department (EAPD) regarding being abused by TURNQUIST. On April 1, 2020, I accompanied WCSO and EAPD as they executed a state search warrant at TURNQUIST's residence that he shared with his current wife, Carly Turnquist (nee Bunce). Numerous items were seized and later searched pursuant to the warrant with limited investigative value. WCSO and the Wyoming County District Attorney's Office provided me with certain information from their case file, some of which I summarize below.

5. In February 2018, EAPD began an investigation into TURNQUIST when a 15-year-old girl told CPS that TURNQUIST showed her pornography on his phone (EAPD report 18-803233). The 15-year-old girl also told CPS that while she and Victim were watching TURNQUIST's daughters (Victim's half-sisters, Minor 1, and Minor 2), Victim disclosed that she (Victim) was sexually abused by TURNQUIST starting at the age of 12 (about 2010). Victim's half-sister, Minor 1 (then 10-years-old, now about 13) told the 15-year-old girl that TURNQUIST had sex with Victim and that she (Minor 1) saw Victim walking

2

out of TURNQUIST's room naked. In March 2018, EAPD obtained and served a search warrant upon TURNQUIST's cellular telephone. The search yielded thousands of nude images and videos, some of which matched what the 15-year-old girl described to EAPD. However, EAPD could not substantiate that any of the images were Child Sexual Abuse Material (CSAM).

6. On or about February 24, 2020, Victim reported to EAPD that she was forcibly raped by TURNQUIST on numerous occasions from 2010 – 2017, when she finally moved out of the house. Victim's date of birth is XX/XX/1998, meaning she turned 12 years old during 2010 and 19 years old during 2017. Victim provided EAPD with a signed deposition on March 9, 2020. In summary, the deposition stated that on July 30, 2010, Victim was struck by a car and injured. At the time, TURNQUIST was her mother's boyfriend (later husband, and now ex-husband). Victim recalled that in November 2010, she was first sexually assaulted by TURNQUIST. In the deposition, she stated that in spring 2011, TURNQUIST forcibly raped her for the first time. The detailed statement recounted various types of sexual abuse, approximate number of incidents, and the residences in which they took place. The deposition concluded with Victim recounting a 2016 letter that Carly Turnquist (TURNQUIST's current wife) wrote her. I reviewed the letter and found it stated:

> "…but I love you and there is no way I want to loose (sic) you…come hold me from behind. I want to discover new things with you. I want to make love to you and go on trips with you and have things just between you and I and have things just between you and I and also have things between the three of us…I want you to look at me and damn yea she's mine and proud of it cause I do you…I love you so much, Carly."
>
> The letter then goes on after Carly's signature, "I wanna hold each other and you cover over and sit with me and lay with me."

Finally, the deposition concluded with Victim referring to a Valentine's Day card given to her by TURNQUIST in 2017. I reviewed the card and found it closed with "from the guy that has and always will love you, your bf, Nick."

7. On March 12, 2020, EAPD contacted WCSO regarding TURNQUIST (Complaint number 20-002057, written by Investigator Aaron Anderson). The report summarized the information provided by EAPD to include locations Victim resided with TURNQUIST and the approximate number of times she was raped at each. The report stated that TURNQUIST began dating Carly Bunce (now TURNQUIST) and she moved into their home around Easter 2016. Victim advised that Carly watched TURNQUIST rape Victim and she participated by touching Victim's breasts. Victim advised that type of abuse continued until Victim left the residence (as a young adult) and moved in with her current husband.

8. On March 17, 2020, Investigator Anderson (WCSO) and Detective Longboat (EAPD) met with Victim (same complaint number). Victim explained that she came forward because her half-sisters, Minor 1 and Minor 2, still resided with TURNQUIST and Carly Turnquist. Victim told law enforcement that TURNQUIST took her on several out-of-state trips where sexual abuse occurred. The trips included Splash Lagoon in Erie, Pennsylvania, a casino and Great Wolf Lodge in Canada, an aquarium in Baltimore, Disney World in Orlando, Florida, and a water park in Sandusky, Ohio. Victim advised that they slept in the same bed and TURNQUIST sexually abused her during the trips.

9. While law enforcement searched the TURNQUIST residence on April 1, 2020, TURNQUIST was arrested by WCSO and charged with certain sexual offenses against

4

Victim.  During WCSO/EAPD's interview of TURNQUIST, he said he had sexual intercourse with Victim, but claimed Victim was 18 years old at the time and that the contact was consensual.

10. On April 2, 2020, Victim's Mother (VM), who is also TURNQUIST's ex-wife, provided EAPD with a deposition.  In the deposition, she recalled a February 2011 trip to Florida where TURNQUIST wanted to have sex with VM but she refused because the girls were not yet asleep.  Moments later, Victim, who was laying in another bed, said she and TURNQUIST have sex while VM is at work.  VM brought Victim into the bathroom where Victim recanted her statement.  In the same deposition, VM recalled Victim seeing a counselor after being struck by a vehicle.  On one occasion, the counselor told VM that she thought Victim had "been involved in a sexual encounter or was being sexually abused."  I note for the Court that when law enforcement later contacted the counselor, she recalled Victim being one of her clients, but did not recall having any concerns of sexual abuse.

11. On April 10, 2020, Amber Talarico, an ex-girlfriend of TURNQUIST's, provided WCSO with a deposition.  In the deposition, Talarico wrote, "[TURNQUIST] and his previous girlfriend Carly had sex with his daughter [Victim] 10 times and Carly initiated it. [TURNQUIST] told me several times that more happened with [Victim] but he did not want to tell me what it was and would take it to his grave."

12. On April 4, 2020, TURNQUIST called his wife, Carly Turnquist, from the Wyoming County Jail.  The call was recorded and provided to me by the Wyoming County District Attorney's Office.  During the call, TURNQUIST told Carly, "[Victim's] not saying that it was statutory rape, she's not saying that it was just rape, she's saying that we forced

5

and left marks on her." TURNQUIST then told his wife to "find out what the age of statute is", for each state they traveled to. I believe TURNQUIST was referring to the age of consent for sexual contact in each state he visited with Victim where sexual acts occurred. TURNQUIST then told his wife to look up the age of consent for Canada, Pennsylvania, Ohio, Maryland, South Carolina, and Florida. TURNQUIST then posed the hypothetical, "let's say Pennsylvania is 15" before stating that law enforcement cannot charge him with a crime that if the sexual contact was legal where it occurred. TURNQUIST seemed upset that Victim claimed the rapes were forcible, "she's saying it's all rape rape."

13.     As part of this investigation, the FBI served multiple Grand Jury subpoenas upon financial institutions to identify payments made to secure reservations and while on out-of-state trips. Grand Jury subpoenas were also issued to resorts and vacation locations frequented by TURNQUIST. From those records, among records revealing numerous other out-of-state trips, I know that on May 8, 2014 TURNQUIST prepaid for a reservation at Splash Lagoon in Erie Pennsylvania and arrived at the resort on May 16, 2014 with no other adult and with three children, checking out on May 17, 2014. I know that Victim was 15 years old on the date of this trip and the age of consent in Pennsylvania is 16. The records also reflect that on September 5, 2014 there was a charge for $292.46 at the Great Wolf Lodge in Niagara Falls Canada. On another occasion, TURNQUIST purchased a Groupon voucher on September 30, 2014, for a trip to the Kalahari Resort in Sandusky Ohio. TURNQUIST arrived at the Kalahari Resort on October 12, 2014 as one of two guests, checking out on October 14, 2014. Again, on December 19, 2014 TURNQUIST prepaid for a reservation at Splash Lagoon in Erie Pennsylvania and arrived at the resort on December 23, 2014 with no

other adult and three children, ages, 7, 7 and 16 years old, checking out on December 24, 2014. I know Victim was 16 years old during the December 23-24, 2014 trip and, under Pennsylvania state law, it is a felony for someone over the age of 18 to engage in any act that corrupts or tends to corrupt the morals of any minor less than 18 years of age.  At all times relevant to this investigation, TURNQUIST was over the age of 18.

14.     On September 15, 2020, TURNQUIST's daughter, Minor 2 (Victim's half-sister) was forensically interviewed at the Child Advocacy Center.  During the interview, Minor 2 told the interviewer that she witnessed TURNQUIST have sexual intercourse with Victim.  Minor 2 said, "he would force her to do things" that adults do and said she observed TURNQUIST forcing Victim onto his lap.  Minor 2 recalled a trip to Pennsylvania that took place, she believes when she was five years old and in the middle of kindergarten.  Minor 2 said the hotel was close by and near the beach.  Based on that description, I believe Minor 2 was likely referring to a trip to Erie, Pennsylvania.  During the trip, based on her description, I believe Minor 2 described Victim having sexual intercourse with TURNQUIST.  She recounted the two having some clothing on but Victim being on top of TURNQUIST, facing him, her legs spread over TURNQUIST, and that the two were under a blanket.  Minor 2 heard Victim tell TURNQUIST to stop but he told her that he was the adult and would do what he wanted.  When Minor 2 got home from the trip, she told her mother what she observed.  Minor 2 said she observed or heard sexual contact between TURNQUIST and Victim from the middle of kindergarten until the middle of 2nd grade, which I know to be late 2014/early 2015 to late 2016/early 2017.  Specially, Minor 2 said whenever her mother was at work, TURNQUIST would force or push Victim into his bedroom and Minor 2 then heard

noises that adults make "when doing that", referring to sexual contact.

15. On October 23, 2020, I interviewed Victim who recalled the December 2014 trip to Splash Lagoon in Erie, Pennsylvania, that she went on with TURNQUIST, Minor 1 and Minor 2. Victim added that most of the trips to Splash Lagoon were one night in duration, but some were a weekend trip (two nights). Victim recalled this specific trip because the group returned home on Christmas Eve. Victim advised that sexual contact occurred on each of these trips after her sexual abuse began at age 12. Victim always knew sexual contact with TURNQUIST would occur on these trips prior to departing; she was confident TURNQUIST knew he would have sexual contact with her while away from home. Victim said the frequency of these trips greatly increased after her sexual abuse began and pointed out that her family took very few trips prior to the start of her abuse.

16. During the same interview, Victim said the trips to water parks were generally taken by herself, TURNQUIST, Minor 1, and Minor 2. TURNQUIST also took Victim on trips alone as well; most were to a casino in Niagara Falls, Canada, and a trip to the aquarium in Baltimore, Maryland. TURNQUIST used to take Victim on a birthday trip every year and recalled one to the Clifton Hill area of Niagara Falls, Canada. Victim was excited to go because she recently obtained her enhanced drivers permit and drove across the bridge into Canada. Victim was confident that sexual contact occurred at the hotel while on this trip to Clifton Hill. Victim recalled attending a trip to Florida with the entire family (TURNQUIST, VM, Minor 1, and Minor 2) while she was in middle school. During the trip, TURNQUIST often sought time alone with Victim to run errands, such as purchasing ice. During these errands, TURNQUIST sexually touched her. One evening during the trip, Victim began to

cry and then disclosed the abuse to VM, who did not believe her. I believe this incident was recalled by VM and is annotated above in VM's statement to law enforcement.

      17.     As part of the investigation, I reviewed the 2018 phone search conducted by EAPD pursuant to a search warrant. When doing so, I discovered a series of photographs titled (in sequence) NCM_0364 – NCM_0389. Each of these images were of Minor 1 and/or Minor 2 in a pool or in the hotel room. Each of the images had .EXIF data present that showed the pictures were taken on 12/23/2014. However, none had any GPS/location data; I believe the depicted images are consistent with Splash Lagoon in Erie, Pennsylvania, the trip Victim discussed above. Another series of photos were titled in sequence, NCM_0092 – NCM_0288 depicted TURNQUIST, Minor 1, Minor 2, and Victim at Great Wolf Lodge. The series of images showed combinations of the aforementioned individuals (that is, each did not show all four). The .EXIF data on these images showed they were taken on 09/05/2014 and 09/06/2014. As discussed above, the group took a trip to Great Wolf Lodge, Niagara Falls, Canada during the annotated period. A third set of photographs on the phone, NCM_0601 – NCM_0621 depicted Minor 1 and/or Minor 2 only in the pools/slides at a water park. The .EXIF data indicates the images were taken on 07/16/2015 and 07/17/2015. From financial analysis, I know that on July 12, 2015, TURNQUIST purchased a Groupon for a prepaid upcoming trip to Kalahari Resort (water park) in Pocono Manor, Pennsylvania. Records indicate that on July 16, 2015, TURNQUIST arrived at the park at 7:47 pm and checked in with three other guests (four total guests). On July 18, 2015, at 12:03 pm, records indicate the group checked out.

18. Based on the .EXIF data, each of the images discussed were produced using a Casio smartphone, model C811. During the April 2020 search of TURNQUIST's home, a Casio smartphone model C771 was seized; I note that the seized device is not the same used to take the pictures discussed.

## CONCLUSION

I submit that probable cause exists that during the December 2014 Splash Lagoon trip in Erie, Pennsylvania, TURNQUIST had sexual intercourse with Victim. I respectfully submit that I have probable cause to believe that **NICHOLAS TURNQUIST** has violated Title 18 U.S.C. Section 2423(a) [Transportation with Intent to Engage in Criminal Sexual Activity].

Randall E. Garver, Special Agent
Federal Bureau of Investigation

Sworn to telephonically this 2nd day of November 2020.

JEREMIAH J. MCCARTHY
United States Magistrate Judge

10