IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

        v.                                 21-CR-15-JLS

NICHOLAS TURNQUIST,

                 Defendant.
_____

## GOVERNMENT'S TRIAL MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorneys, hereby submit this Trial Memorandum of Law and Motions *in Limine* on behalf of the government to summarize its theory of the prosecution and related issues which may become relevant during trial.  This memorandum is not intended to be all inclusive and is not intended to restrict the government's presentation of the proof at trial.

## I.      INTRODUCTION

This memorandum is provided in compliance with the Court's Amended Pretrial Order (Doc. 88).  It contains briefing on evidentiary issues likely to arise at trial and the applicable authority the government submits should guide the Court in its evidentiary rulings.  This memorandum should not be interpreted as a Bill of Particulars or construed as the extent of the government's proof that it will offer at trial.  This memorandum simply contains a brief outline of the government's anticipated proof, evidentiary issues that may arise at trial, along with the government's pretrial motions *in limine*.  The government reserves its right to

supplement this memorandum, to raise any additional motions *in limine*, and/or to respond to any evidentiary issues raised by the defendant.

## II.   STATEMENT OF THE CASE

On March 8, 2022, the defendant was charged in a Superseding Indictment with five counts of transporting and attempting to transport a minor in interstate or foreign commerce with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423 (a) and (e).  Count 1 relates to the defendant's transportation of the Victim[1] from the state of New York to the state of Maryland on or about April 26, 2014.  Count 2 relates to the defendant's transportation of the Victim from the state of New York to Niagara Falls, Canada on or about September 5, 2014.  Counts 3 and 4 relate to the defendant's transportation of the Victim from the state of New York to the state of Pennsylvania on or about December 23, 2014, and July 16, 2015, respectively.  Count 5 relates to the defendant's transportation of the Victim from the state of New York to the state of Florida on or about September 19, 2015.  On April 6, 2022, this Court scheduled the matter for trial to commence on July 6, 2022.

## III.   STATEMENT OF FACTS[2]

In February of 2020, the Victim, who was born in June of 1998, reported to the East Aurora Police Department ("EAPD") and disclosed that she was sexually abused by the defendant, NICHOLAS TURNQUIST.  The sexual abuse occurred from approximately

---

[1] The reference to the witnesses in this Trial Memorandum is consistent with the references used in the government's Witness List, filed simultaneously with this memorandum.

[2] The government anticipates the proof at trial will show the facts summarized below.  This summary is provided for the purpose of anticipating evidentiary issues and assisting the Court and the parties in conducting the trial efficiently.  This summary should not limit, restrict, or estop the government's overall proof at trial.

2

November 2010 through February 2017 when she was approximately 12 to 18 years old. During this period, the Victim resided with the defendant at various locations in Erie and Wyoming Counties.  Based upon this report, EAPD contacted the Wyoming County Sheriff's Department ("WCSD"), who also began investigating the defendant.  The Victim further disclosed to investigators that the defendant sexually abused her on various interstate and foreign trips.  On numerous trips, the defendant transported the Victim – sometimes alone and other times with other family members.  The sexual abuse, which included sexual intercourse, occurred on each trip.

During multiple interviews with law enforcement, the Victim described how the defendant sexually abused her over a multi-year period.  The defendant was previously in a relationship with the Victim's mother, Amanda Stromecki, to whom he eventually became married and then subsequently divorced.  In 2010, the Victim was severely injured during a car accident.  While recovering from her injuries, the defendant largely cared for her while her mother worked.  The Victim disclosed that the sexual abuse began during this period as touching outside of her clothing and then progressed to touching under her clothing. Eventually, the defendant began to have sexual intercourse with her.  The sexual abuse continued until the Victim moved out of the defendant's home to reside with her current husband in February or March of 2017.

On March 17, 2020, the Victim attempted to make a recorded telephone call with the defendant at the direction of the EAPD and WCSD.  The defendant did not answer, and text messaged the Victim "Hey you called" shortly thereafter.  The Victim replied, "Can we talk"

and the defendant responded.  The Victim called the defendant.  The call was recorded, and the Victim discussed their family and the sexual abuse throughout.

Also, as a part of the investigation, law enforcement sought and obtained a search warrant authorizing the search of the defendant's residence and seizure of electronic devices. Wyoming County Court Judge as Acting Java Town Justice Michael M. Mohun issued the search warrant on March 31, 2020.  During the search warrant execution on April 1, 2020, the defendant consented to a search of his cell phone and computer.  The defendant further agreed to give a voluntary statement at the EAPD station.  The statement was video recorded. During that statement, the defendant admitted to having sexual intercourse with the Victim, but claimed such intercourse was consensual, occurred at the Reading Road, West Falls residence, and that he does not think she was under 18 years-old and if so, she was 17 years-old.  Following his voluntary statement, the defendant was arrested for violation of New York Penal Law[3].  The defendant has remained in custody since that time.

On September 15, 2020, Minor 1, the minor biological daughter of the defendant, was forensically interviewed at the Erie County Child Advocacy Center.  During the interview, Minor 1 disclosed that she witnessed the defendant's sexual abuse of the Victim, including during trips.  While in custody on the state charges, the defendant made several telephone calls in which he described the allegations made by the Victim and requested his current wife, Carly Turnquist gather evidence, in part by making timelines and researching the age of

---

[3] In July 2020, criminal charges pending in Wyoming County proceeded to trial.  The trial judge in that matter granted a trial order of dismissal.  As described below in its motion *in limine*, the government seeks preclusion of any evidence relating to the outcome of that separate state criminal trial.

4

consent in certain states and Canada to which the defendant travelled with the Victim.  The telephone calls were recorded by the jail facility in the normal course of business.

During the investigation, law enforcement obtained various bank, financial, hotel, travel and other records that documented the following trips: from the state of New York to the state of Maryland on or about April 26, 2014; from the state of New York to Niagara Falls, Canada on or about September 5, 2014; from the state of New York to the state of Pennsylvania on or about December 23, 2014 and July 16, 2015; and from the state of New York to the state of Florida on or about September 19, 2015.  These records document interstate and foreign trips that are consistent with the Victim's recollection.

## IV.   RELEVANT LAW

The defendant is charged in Counts One through Five of the Superseding Indictment with transporting and attempting to transport the Victim in interstate or foreign commerce with the intent to engage in criminal sexual activity, in violation of 18 U.S.C. § 2423 (a) and (e).  Count 1 relates to the defendant's transportation of the Victim from the state of New York to the state of Maryland on or about April 26, 2014.  Count 2 relates to the defendant's transportation of the Victim from the state of New York to Niagara Falls, Canada on or about September 5, 2014.  Counts 3 and 4 relate to the defendant's transportation of the Victim from the state of New York to the state of Pennsylvania on or about December 23, 2014, and July 16, 2015, respectively.  Count 5 relates to the defendant's transportation of the Victim from the state of New York to the state of Florida on or about September 19, 2015.  Section 2423(a) provides:

A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.

In order to convict the defendant of the charge of transporting a minor with the intent to engage in criminal sexual activity, the government is required to prove beyond a reasonable doubt the following three elements: (1) that the defendant knowingly transported the Victim in interstate or foreign commerce as alleged in the indictment; (2) that the defendant transported the Victim with the intent that the Victim would engage in sexual activity for which the defendant could be charged with a crime; and (3) that said Victim was less than eighteen years old at the time of the acts alleged in the indictment. *United States v. Broxmeyer*, 616 F.3d 120, 128 (2d Cir. 2010).

In *Broxmeyer*, the Second Circuit discussed the intent requirement holding that under the statute, the government must prove that the defendant crossed a state line with the intent to engage in sexual activity with the victim.  616 F.3d at 129 ("The plain wording of the statute requires that the *mens rea* of intent coincide with the *actus reus* of crossing state lines."). Furthermore, the government must prove that one of the "dominant" purposes of the travel, of which there may be others, was to engage in sexual activity.  *United States v. Miller*, 148 F.3d 207, 211-13 (2d Cir. 1998); *United States v. Sirois*, 87 F.3d 34, 40 (2d Cir. 1996) (if multiple motives or purposes are present, the illegal activity need not be the sole dominant purpose of the interstate movement, but merely "one of the dominant motives for the interstate transportation"); *United States v. Vickers*, 708 F. App'x 732, 737 (2d Cir. 2017) (noting that

"the relevant question is not the purpose of the trucking trips, but what [the defendant's] intent was in bringing [the victims] along on such trips").  Therefore, the government must prove that the defendant transported the Victim on the trips for the purpose of sexually abusing her.

Should the defendant seek to argue that the Victim consented to the interstate or foreign transportation or consented to engage in sexual activity with the defendant, the government will argue that such issue is irrelevant.  Under the Mann Act, it has long been held that a victim's consent is not a defense.  *See Gebardi v. United States*, 287 U.S. 112, 121 (1932); *United States v. Holland*, 381 F.3d 80, 84-85 (2d Cir. 2004); *United States v. Griffith*, 2000 WL 1253265, *18 (S.D.N.Y. Sept. 5, 2000) ("The Mann Act ... has never, since its inception, provided for a defense of consent."); *United States v. Lowe*, 145 F.3d 45, 52 (1st Cir. 1998) ("Consent is a defense to kidnapping but not to a Mann Act charge.").

To establish a violation of Section 2423(a), the defendant must have engaged in sexual conduct for which he could have been charged with a crime.  Therefore, the Court must instruct the jury on the possible state law crimes that the defendant could have been charged with.  Numerous state and foreign criminal statutes exist that the defendant could have been charged with that correspond to his conduct on each of the charged trips.  The government realizes that it would be impracticable for the Court to instruct the jury on all the state and foreign crimes for which the defendant could have been charged, and therefore, has selected a few state and foreign law crimes to be included in the government's proposed jury instruction.  It is the government's position that these crimes adequately capture the nature of the defendant's conduct during the interstate and foreign travel with the Victim.

7

## V.   POTENTIAL EVIDENTIARY/LEGAL ISSUES

### A.   Business Records

The government may offer into evidence bank, financial, hotel, and other travel records, which are admissible as records of regularly conducted activity or absence of the same pursuant to the Federal Rules of Evidence 803(6) and (7).  The Second Circuit has stated that "Rule 803(6) 'favors the admission of evidence rather than its exclusion if it has any probative value at all.'"  *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000), *quoting In re Ollag Constr. Equip. Corp.*, 665 F.2d 43, 46 (2d Cir. 1981).  A prerequisite to admissibility is "that the record have 'sufficient indicia of trustworthiness to be considered reliable.'"  *Id.*, *quoting Saks Int'l v. M/V "EXPORT CHAMPION"*, 817 F.2d 1011, 1013 (2d Cir. 1987).  "To lay a proper foundation for such a record, a 'custodian or other qualified witness' must testify that the document was 'kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record].'"  *Id.*, *quoting United States v. Freidin*, 849 F.2d 716, 719 (2d Cir. 1988) (internal quotation marks and citation omitted).

While the business record must be regularly maintained, it does not need to be routinely made.  *See*, *e.g.*, *Willco Kuwait (Trading) S.A.K. v. deSavary*, 843 F.2d 618, 628 (1st Cir. 1988) ("'non-routine' records made in the course of a regularly conducted business should be admissible under Rule 803(6) so long as (i) they meet the other requirements of the rule, and (ii) the attendant circumstances do not indicate a lack of trustworthiness"); *Kassel v. Gannett Co., Inc.*, 875 F.2d 935, 945 (1st Cir. 1989); *United States v. Jacoby*, 955 F.2d 1527,

1536-37 (11th Cir. 1992) (allowing documents that noted concerns about transactions the defendant was involved with to be admitted as business records even though they were not routinely made, but instead were made from once a week to once a month or even less); *Accord* 4 J. Weinstein & M. Berger, Weinstein's Evidence § 803(6)[03] at 803-182 (1988).

For admissibility, whether the witness introducing the document created the document or simply received and maintained it in the normal course of business is irrelevant.  *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995); *Dyno Construction Co. v. McWane, Inc.*, 198 F.3d 567, 575-76 (7th Cir. 1999).  For example, surveys, laboratory analyses, correspondence, reports, agreements and other records prepared by one entity and retained in the files of a separate entity, in the normal course of the retaining entity's business, are admissible under Rule 803(6).  *United States v. Ullrich*, 580 F.2d 765, 771 (5th Cir. 1978).  The sound policy supporting such an admission is that the regular receipt of the records, reliance upon them and their integration into the receiving entity's day-to-day operations lend a "trustworthiness and probative value" to the records.  *See Black Sea & Baltic General v. S.S. Hellenic Destiny*, 575 F.Supp. 685, 691 (S.D.N.Y. 1983).  Where such circumstances are present, the records are admissible under Rule 803(6) even without testimony by a representative of the entity that prepared the records.  *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1099 (3d Cir. 1995) ("Rule 803(6) of the Federal Rules of Evidence ... permits the admission of documents prepared in the ordinary course of business, even if the individual who prepared them does not testify about their contents."); *United States v. Parker*, 749 F.2d 628, 633 (11th Cir. 1984); *United States v. Hawkins*, 905 F.2d 1489 (11th Cir. 1990); *see also United States v. Reden*, 556 F.2d

278, 280 (5th Cir. 1977) (credit card receipts, completed by business establishments, are admissible as business records of the issuing companies).

Where the foundation required under Rule 803(6) is laid, business records are admissible even when the records are incomplete and inaccurate.  Claims of inaccuracy and incompleteness are matters going to the weight of the evidence and not its admissibility.  *United States v. Panza*, 750 F.2d 1141, 1151 (2d Cir. 1984); *Matador Drilling Company v. Post*, 662 F.2d 1190, 1199 (5th Cir. 1981); *United States v. Gremillion*, 464 F.2d 901 (5th Cir. 1972), *cert. denied*, 409 U.S. 1085 (1972).

### B.   <u>Public Records</u>

The government may offer into evidence documents created by governmental agencies as part of their everyday function.  These documents include records from the EAPD, WCSD, the Wyoming County Jail, the Genesee County Jail, and the United States Customs and Border Protection.  The government may also offer recordings of the defendant's telephone calls made while in custody.  All of these records are admissible as public records of the agency or the defendant's statements.

The public records exception permits the admittance of any report created by a public agency that is related to the duties imposed on the agency by law.  Fed. R. Evid. 803(8).  While the public records exception generally does not apply to criminal matters observed by police officers and other law enforcement personnel, courts have recognized the difference between objective observations made by law enforcement personnel as part of the everyday function of the agency and observations made by law enforcement personnel while

investigating a crime.  *See United States v. Feliz*, 467 F.3d 227, 237 (2d Cir. 2006) (holding that

an autopsy report qualified as a public record under Fed. R. Evid. 803(8)); *United States v.

Thompson*, 420 F.2d 536, 545 (3d Cir. 1970) ("it has long been held that official registers or

records kept by persons in public office in which they are required, either by statute or by the

nature of their office, to write down particular transactions occurring in the course of their

public duties, are admissible, without calling the persons who made them, as a reasonable

exception to the hearsay rule"); *United States v. Quezada*, 754 F.2d 1190, 1193-94 (5th Cir.

1985) (recognizing that Rule 803(8) should not be interpreted narrowly and distinguishing

between law enforcement reports that were prepared in a routine, non-adversarial setting and

law enforcement reports made while investigating a crime or evaluating the results of an

investigation).  Thus, while the business records exception cannot be a "backdoor" to admit

evidence otherwise precluded by Rule 803(8), observations maintained as a part of an official

duty by law enforcement personnel not in anticipation of litigation, are admissible under both

the Business Rule exception and the Public Records exception.  *United States v. Grady*, 544

F.2d 598, 604 (2d Cir. 1976); *United States v. Brown*, 9 F.3d 907, 911 (11th Cir. 1993), *citing

Quezada*, 754 F.2d at 1194.


C.    **Self-Authenticating Records**

Pursuant to Federal Rules of Evidence 609, 901, 902(1), and 902(4), the government

may offer into evidence certificates of public documents, including documents from United

States Customs and Border Protection as well as Wyoming and Erie County Clerk's Office

and Family Court.  These documents are self-authenticating public documents because they

bear either a public seal and a signature purporting to be an attestation or execution or an official signature certified by an officer who has a seal.

### D.    Defendant's Statements – Rule 801(d)(2)

The government may seek to play recordings of the defendant's March 17, 2020 telephone conversation with the Victim, defendant's April 1, 2020 voluntary statement, and the defendant's telephone calls made while in custody for the jury.  The government may also seek to introduce the defendant's statements made to the Victim, overheard by Minor 1 when she witnessed sexual abuse, and other statements made to Amber Talarico.  These statements are not hearsay and are admissible at trial.

A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801(c); *see also Davis v. Velez*, 797 F.3d 192, 200 (2d Cir. 2015).  The various statements made by the defendant are admissible under the multiple prongs of Rule 801(d)(2) as admissions by a party opponent.  Rule 801(d)(2) provides that a statement is not hearsay if "[i]t is offered against the party and is . . . the party's own statement."  In this context, statements made by a defendant are generally admissible regardless of whether such statements were against his interest when made.  *See United States v. Shulman*, 624 F.2d 384, 390 (2d Cir. 1995).

Likewise, under Rule 804 (b)(3), hearsay statements may be admitted at trial where, at the time the statements are made, they are "so contrary to the declarant's pecuniary interest" that a reasonable person in the declarant's position would have made the statement only if they believed it to be true.  Fed. R. Evid. 804(b)(3)(A).  A statement against interest must be sufficiently against the declarant's pecuniary interest so that it would be unreasonable

for the declarant to make the statement without it being true.  *United States v. Williams*, 506 F.3d 151, 154-55 (2d Cir. 2007).  In *Williams*, the Second Circuit found statements made by the defendant, who boasted of his participation in a murder to two testifying witnesses, were properly admitted under 804(b)(3).  *Id.* at 154-55.  Like in *Williams*, the defendant made several statements admitting to or referencing having sexual intercourse with the Victim to multiple witnesses that the government may call to testify.  As such, these statements are admissible.

To aid the jury's understanding, the government will prepare transcripts of the recordings of the defendant's statements.  The government will provide defense counsel with the proposed transcripts before trial.  Should the Court request, the government will also provide the Court with a proposed instruction addressing how the jury may use the transcripts.

### E.    Prior Consistent Statements – Rule 801(d)(1)(B)

Ordinarily, a witness's prior statements would be hearsay inadmissible under Rule 801.  However, under Rule 801(d)(1)(B), a witness's prior consistent statements are not hearsay if they are offered:

(i)     to rebut an express or implied charge that the declarant recently fabricated it or acted from a recent improper influence or motive in so testifying; or

(ii)    to rehabilitate the declarant's credibility as a witness when attacked on another ground….

13

Fed. R. Evid. 801(d)(1)(B).  With respect to subsection (i), the Second Circuit has held that prior consistent statements are admissible so long as they are "made before the declarant developed the alleged motive to fabricate."  *United States v. Forrester*, 60 F.3d 52, 64 (2d Cir. 1995); *see also United States v. Al-Moayad*, 545 F.3d 139, 167 (2d Cir. 2008).  Pursuant to the Advisory Committee Notes relevant to the amendment to add subsection (ii) to Rule 801(d)(1)(B), the amended rule was intended to alter the substantive admission of consistent statements by noting "that prior consistent statements otherwise admissible for rehabilitation are now admissible substantively as well."  Fed. R. Evid. 801 advisory committee's note (2014).  The Advisory Committee Notes further explain that the "intent of the amendment is to extend substantive effect to consistent statements that rebut other attacks on a witness – such as the charges of inconsistency or faulty memory."  *Id.*

The government expects that the Victim and other potential witnesses who testify will be vigorously cross-examined.  If that cross-examination includes express or implied charges of recent fabrication, improper influence or motive, or attacks on the witness's credibility, the government intends to seek to admit, where appropriate, that witness's prior consistent statements pursuant to Rule 801(d)(1)(B).

## F.   **Expert Testimony**

The government intends to call at least one expert to testify at trial[4].  Federal Rule of Evidence 702 states that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified

---

[4] The government is serving separate expert disclosure simultaneously with the filing of this Trial Memorandum.

as an expert by knowledge, skill, experience, training, or education, may testify
thereto in the form of an opinion or otherwise.

A trial judge has broad discretion in determining whether to admit such testimony, *United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989); *United States v. Diaz*, 878 F.2d 608 (2d Cir. 1989), and a trial judge's determination will be sustained on appeal unless "manifestly erroneous." *Tutino*, 883 F.2d at 1134.

Several courts have addressed the introduction of expert testimony in sexual abuse cases, on topics including delayed disclosure, grooming, and victim behaviors. *See United States v. Weisinger*, 586 Fed.Appx. 733 (2d Cir. 2014) (upholding a district court's admission of expert testimony regarding delayed disclosure by victims in sexual abuse cases); *United States v. Lukashov*, 694 F.3d 1107, 1115-17 (9th Cir. 2012) (holding that expert testimony regarding the characteristics used to assess a child victim's story of sexual abuse was properly admitted); *United States v. Bennett*, 258 Fed.Appx. 671, 2007 WL 4372925, *4-7 (5th Cir. Dec. 13, 2007) (finding that the government's expert was qualified to testify about the tendency of sexual abuse victims to exhibit behaviors that facilitated further abuse); *United States v. Hitt*, 473 F.3d 146, 158-59 (5th Cir. 2006) (district court did not abuse its discretion in admitting expert testimony regarding behavior typically exhibited by child molesters in "grooming" child victims and regarding behavior exhibited by abuse victims in returning to their abusers); *United States v. Hayward*, 359 F.3d 631, 636-37 (3d Cir. 2004) (expert testimony regarding profiles of acquaintance child molesters was permissible); *United States v. Long*, 328 F.3d 655, 665-68 (D.C. Cir. 2003) (same); and *United States v. Romero*, 189 F.3d 576, 582-86 (7th Cir.1999) (allowing expert testimony regarding the "modus operandi of modern child molesters"). Additionally, the Supreme Court has stated that the "concern" regarding

delayed disclosure by victims of sexual abuse "is amply supported by empirical studies." *Stogner v. California*, 539 U.S. 607, 649 (2003).

### G.   Identification of Minor Witnesses

The government expects to call at least one minor witness to testify.  To protect the privacy of Minor 1 — who is approximately 12 years-old —the government seeks permission to refer to her as Minor 1 or by some other pseudonym at trial.  Minor 1 is an immediate family member of the defendant.  If Minor 1 were publicly identified at trial, her name—and her connection to this defendant—could easily be found in publicly-accessible court transcripts for the rest of her life.  She should not be required to live the rest of her life with the possibility that her involvement as a witness to the sexual abuse inflicted by her father on her half-sister be publicly known.

This Court is authorized to "issue an order protecting a child from public disclosure of the name of or any other information concerning the child in the course of the proceedings, if the court determines that there is a significant possibility that such disclosure would be detrimental to the child."  18 U.S.C. § 3509(d)(3)(A).  "It is easy to see how the disclosure of a child's name as the victim of a sex offense can be 'detrimental to the child.'" *United States v. Troup*, No. 3:12-CR-36-JD, 2012 WL 3818242, at *3 (N.D. Ind. Aug. 31, 2012) (noting that "[t]he factual nature of this case makes it likely, even probable, that the children involved will be subject to harassment by their peers if their names are publicly associated with the case, and the government has introduced evidence showing that such reprehensible behavior has already occurred").  Courts have relied on similar reasoning to require sex trafficking victims

to be identified by pseudonyms to "protect[] [them] from likely adverse personal, professional and psychological consequences of linking their identities to their past lives as sex workers." *United States v. Thompson*, 178 F. Supp. 3d 86, 96 (W.D.N.Y. 2016) (quotation marks omitted); *see also United States v. Gardner*, 2016 WL 5404207, at *4 (E.D. Mich. Sept. 28, 2016) (collecting cases). While Minor 1 is not a victim in this case, the same is true here: identifying Minor 1 as a witness to a child sexual abuse offense perpetuated by a family member could cause unknowable personal, professional, or psychological harm for years or decades from now. Minor 1 is entirely blameless in this case, and there is no reason why she should face the possibility of suffering any type of stigma or association with the prosecution of the defendant for these crimes. This is a sufficient basis for the requested order. *See, e.g.*, *United States v. Anderson*, 139 F.3d 291, 302 (1st Cir. 1998) (when considering defendant's challenge that a similar request "lent impermissible credence," "dispos[ing] of" this "issue with little merit," where district court "ordered that, in order to protect their identity, the last names of the juvenile witnesses not be disclosed during the trial").

Finally, the proposed order does not impair the right of the public and the press to a public trial. As the Court has noted when addressing a similar request in a sex trafficking case, the government "has a compelling interest in limiting identification of the victims in this case," and the proposed order is "narrowly tailored to serve" that interest. *Thompson*, 178 F. Supp. 3d at 96. This is because, "[e]ven with the [g]overnment's proposed limit in place, the press and the public would still be able to attend trial and follow the testimony and evidence. . . . Thus, the First Amendment interests underlying the press and the public's right to access criminal trials would still be fully served: even with the [g]overnment's proposed protective

order in place, the trial in this case would still [be] open to 'public scrutiny,' and it would still 'foster an appearance of fairness.'" *Id.*, quoting *Globe Newspaper Co. v. Sup. Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982) (editorial marks omitted).

### H.   Limits on Cross-Examination

Defense counsel has no right to cross-examine a government witness about any unrelated event. *United States v. Marji*, 158 F.3d 60, 63 (2d Cir. 1998) (trial court did not abuse its discretion when it limited defense counsel's attempt to impeach a key government witness by introducing wholly unrelated events). Rule 611(b) provides that cross-examination should not go beyond the subject matter of the direct examination and matters affecting the witness's credibility. Rules 608 and 609, in conjunction, provide the framework for cross-examination as to prior criminal convictions and acts affecting credibility.

The Confrontation Clause of the Sixth Amendment guarantees the defendant in a criminal prosecution the right to confront witnesses against him. This "means more than being allowed to confront the witness physically, for [t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *United States v. Maldonado-Rivera*, 922 F.2d 934, 955 (2d Cir. 1990) (internal citations and quotations omitted). However, the Confrontation Clause does not deprive the court of all discretion in setting limits on cross-examination. *United States v. Flaharty*, 295 F.3d 182, 190 (2d Cir. 2002). It is well-established that the trial court has broad discretion to limit the scope of cross-examination. *See United States v. Cambindo Valencia*, 609 F.2d 603, 630 (2d Cir. 1979), *citing United States v. Green*, 523 F.2d 229, 237 (2d Cir. 1975)). The trial judge is empowered with

18

"wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant." *Maldonado-Rivera*, 922 F.2d at 956, *quoting Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Rahme*, 813 F.2d 31, 37 (2d Cir. 1987) (scope and extent of cross-examination are within sound discretion of trial court); *see also United States v. Pedroza*, 750 F.2d 187, 195 (2d Cir.1984).

Although the government cannot accurately predict defense counsel's cross-examination, if counsel engages in improper questioning, the government anticipates objecting and asking the Court to limit the extent of or the scope of such cross-examination.

## I.   Witness Exclusion and Case Agent Designation

Pursuant to Federal Rule of Evidence 615, the government requests the exclusion of all witnesses from the courtroom until their testimony has been completed.  Sequestration of witnesses is to be virtually automatic unless they fit within one of the specific exemptions in Rule 615.  *United States v. Jackson*, 60 F.2d 128, 135 (2d Cir. 1995).  If there is opposition to the order to exclude a witness from the courtroom, the party opposing it bears the burden to demonstrate why an exemption to exclusion applies, and the party seeking exclusion is to be given an opportunity to demonstrate that it is appropriate.  *Id.* at 135-37; *see also generally, United States v. Rivera*, 971 F.2d 876, 889-90 (2d Cir. 1992).

The government further requests that that Federal Bureau of Investigation ("FBI") Special Agent Randall Garver be designated as the case agent, and therefore, be exempt from

the exclusion order under Rule 615(c).  *See also United States v. Perry*, 643 F.2d 38 (2d Cir. 1981).  Special Agent Garver should be excepted from any sequestration order as his knowledge qualifies him as essential to counsel for the United States in understanding the case.  *See, e.g., United States v. Pellegrino*, 470 F.2d 1205 (2d Cir. 1972).

### J.    Demonstrative Aids and Summary Exhibits and Testimony

The government may seek to introduce charts as demonstrative aids to the jury.  These charts will demonstrate or summarize evidence already admitted during the trial.  Specifically, the government may seek to introduce a chart summarizing the pertinent dates and locations of the charged trips as well as the numerous bank, financial, hotel, travel, and other records substantiating the trips.  Copies of any charts will be provided to defense counsel prior to trial. The government may seek to introduce such demonstrative charts through the testimony of FBI Special Garver or EAPD Detective Darren Longboat.

Allowing the use of charts as "'pedagogical' devices intended to present the government's version of the case" is within the bounds of the trial court's discretion to control the presentation of evidence under Rule 611(a).  *United States v. Posada-Rios*, 158 F.3d 832, 869 (5th Cir. 1998).  Such demonstrative aids typically are permissible to assist the jury in evaluating the evidence, provided the jury is forewarned that the charts are not independent evidence.  *See United States v. Taylor*, 210 F.3d 311, 315 (5th Cir. 2000); *see also United States v. Ogba*, 526 F.3d 214, 225 (5th Cir. 2008) (organizational chart); *see also United States v. Janoti*, 374 F.3d 263, 273 (4th Cir. 2004); *see also United States v. Martinez*, 1998 WL 613572, *5 (2d Cir. 1998) (demonstrative aid admitted in court's discretion).

Similarly, Federal Rule of Evidence 1006 permits summaries of voluminous writings, recordings, and photographs.  Testimony summarizing evidence is admissible.  *United States v. Moore*, 923 F.2d 910 (1st Cir. 1991); *United States v. Sutherland*, 929 F.2d 765 (1st Cir. 1991); *United States v. Sturman*, 951 F.2d 1466, 1480 (6th Cir. 1991).

The government may also rely one or more summary charts during its closing remarks. Summary charts are properly used when there is a proper foundation that links the evidence on the chart to evidence previously admitted.  *United States v. Citron*, 783 F.2d 307, 316 (2d Cir. 1986); *United States v. O'Connor*, 237 F.2d 466, 477 (2d Cir. 1956); *see also United States v. Oshatz*, 912 F.2d 534, 543 (2d Cir. 1990); *United States v. Koskerides*, 877 F.2d 1129, 1134 (2d Cir. 1989); *United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir. 1989) (finding that the jury's use of the government's summary charts did not render the trial unfair as the Second Circuit has "long approved the use of charts in complex trials, and has allowed the jury to have the charts in the jury room during its deliberations, so long as the judge properly instructs the jury that it is not to consider the charts as evidence") (internal citations omitted); *United States v. Pinto*, 850 F.2d 927, 935 (2d Cir. 1988).

The authority to use a summary chart lies under Rule 611(a), which states in pertinent part that: "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time."  Fed. R. Evid. 611(a); *see also Pinto*, 850 F.2d at 936 (referencing Rule 611(a) in its discussion concerning the use of charts and summaries). While this rule does not require any type of limiting instruction by the Court and all the

evidence underlying the exhibits has been previously provided to the defendant, the government agrees that a cautionary instruction is required concerning the use of the summary charts and the summary testimony.  *See Casamento,* 887 F.2d at 1151, *citing United States v. Baccollo,* 725 F.2d 170, 173 (2d Cir. 1983) and *United States v. Goldberg,* 401 F.2d 644, 647-48 (2d Cir. 1968), *cert. denied,* 393 U.S. 1099 (1969).

## K.   <u>Arguing Penalties</u>

Absent extraordinary statutes requiring the jury to participate in sentencing determinations, the *sole* function of the jury is to determine guilt or innocence.  Punishment is within the exclusive province of the court.  *United States v. Del Toro,* 426 F.2d 181, 184 (5th Cir. 1970); *Chapman v. United States,* 443 F.2d 917, 920 (10th Cir. 1971).  As such, it is improper for a party to elicit evidence that would allow the jury to speculate as to the punishment a defendant faces if convicted.  *United States v. Feuer,* 403 Fed. Appx. 538, 540 (2d Cir. 2010) (unpublished) (absent exceptional circumstances, "a defendant has no legal right to introduce evidence or argument regarding sentencing consequences."); *United States v. Cook,* 776 F. Supp. 755, 757 (S.D.N.Y. 1991) ("The function of the jury in a criminal trial is to determine guilt or innocence based upon an impartial consideration of the evidence, unswayed by emotion, fear or prejudice.  Where the jury is permitted to speculate concerning a defendant's possible punishment, a jury cannot properly perform that function.") (citations omitted); *see also United States v. Pabon-Cruz,* 391 F.3d 86 (2d Cir. 2004).

Therefore, it is proper for the Court to interrupt any arguments relating to punishment or appeals for mercy, *see United States v. Wilson,* 439 F.2d 1081, 1082 (5th Cir.1971), *Gretter v.*

*United States*, 422 F.2d 315, 319 (10th Cir. 1970).  Indeed, some cases have held that the Court is required to do so.  *See United States v. Ramantanin*, 452 F.2d 670, 672 (4th Cir. 1971); *May v. United States*, 175 F.2d 994, 1010 (D.C. Cir. 1949); *see also United States v. Young*, 470 U.S. 1, 13 (1985) (stating that the "better remedy" would have been for the trial judge to interrupt defense counsel's improper argument rather than leaving it for the prosecutor to address on rebuttal).

### L.   Right to Impeach Own Witness

It is well-settled that a party is permitted to minimize the impact of an opponent's impeachment by initiating the impeachment.  *See United States v. Ewings*, 936 F.2d 903, 909 (7th Cir. 1991) ("[M]inimizing the 'sting' of an opponent's impeachment by initiating the impeachment yourself is a time-honored trial tactic.") (collecting cases).  The government may bring out information damaging to its witnesses' credibility to prevent the defense from creating the impression, or the jurors from thinking, that the government is trying to hide something from the jury.  *See United States v. Del Purgatorio*, 411 F.2d 84, 87 (2d Cir. 1969); *see also United States v. Koppers Company, Inc.*, 652 F.2d 290, 299 (2d Cir. 1981) (prior inconsistent statements); *see also United States v. Hasenstab*, 575 F.2d 1035, 1040 (2d Cir. 1978) (prior crimes); *see also United States v. Livingston*, 816 F.2d 184, 191 (5th Cir. 1987) (permitting introduction of impeaching statements in direct testimony).

Here, several of the government's witnesses made statements to law enforcement which may be inconsistent, to varying degrees, with some of their anticipated trial testimony. Additionally, some of these witnesses may have committed prior crimes (some resulting in

convictions and some never resulting in arrests).   The government should be permitted to bring out all such information during the direct examination of each witness.

## M.   Stipulations

At the time of this memorandum, the parties have not agreed upon any stipulations. If this changes before trial, the government will promptly notify the Court.

## N.   Rebuttal Evidence and Argument

The government respectfully reserves the right to introduce rebuttal evidence at trial. Generally, rebuttal evidence may be introduced to refute evidence on material issues of fact, whether elicited under direct or cross-examination, as well as to refute evidence on collateral issues of fact elicited on direct examination.   *See United States v. Newman*, 481 F.2d 222, 224 (2d Cir. 1973).   If rebuttal evidence is introduced, it would not be collateral to the main issue of guilt or innocence, nor would it be the result of issues first drawn out by the government. *See United States v. Boatner*, 478 F.2d 737, 743 (2d Cir. 1973).

## O.   Reciprocal Discovery and Affirmative Defenses

The government served multiple demands for reciprocal discovery from the defense. As of the date of this memorandum, the government has not received any discovery from the defendant.   To the extent that there exists reciprocal discovery to which the government is entitled under Federal Rules of Criminal Procedure 12.1, 12.2, 16(b), or 26.2 that the defense has not produced, the government reserves the right to seek the exclusion of such materials at trial.   *See United States v. Young*, 248 F.3d 260, 269-70 (4th Cir. 2001) (upholding exclusion under Rule 16 of audiotape evidence defendant did not produce in pretrial discovery where

defendant sought to introduce audiotape on cross-examination of government witness not for impeachment purposes, but as substantive "evidence in chief" that someone else committed the crime).

As to affirmative defenses, the defendant has not given notice of his intent to rely on any defense of entrapment, mental incapacity, duress, or alibi.  Therefore, to the extent the defendant may attempt to rely on any such defense, the government reserves the right to object and to seek to have the defendant precluded from asserting such defenses.

### P.    Other Issues

The government hereby requests to reserve its right to submit supplemental memorandum to the Court on evidentiary issues should the need arise after the filing of this trial memorandum.  This request is based on the fact that prior to trial there may be addition evidentiary issues that the Court should be made aware.

### VI.    GOVERNMENT'S SPECIFIC MOTIONS *IN LIMINE*

### A.    Government's Motion to Restrict Use of Third Party's Statements to Impeach

It is anticipated that, at trial, defense counsel will attempt to impeach fact witnesses with the use of statements contained in law enforcement investigative report(s), including but not limited to FBI 302, police reports, and other records created by the various law enforcement agencies that investigated the defendant.  The government anticipates objecting to this procedure unless proper foundation is established and requests a pretrial ruling precluding the defendant from attempting to employ such improper impeachment techniques before the jury.

25

The Federal Rules of Evidence allow the introduction of a prior inconsistent statement to impeach a witness's testimony.  However, a third party's characterization of a witness' statement does not constitute a prior statement of that witness unless the witness has subscribed to that characterization.  *See United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir.), *cert. denied* 447 U.S. 928 (1980).  Thus, in the absence of endorsement by the witness, a third party's notes or report, such as an FBI 302 or similar law enforcement report of a witness's statement may not be admitted as a prior inconsistent statement unless either is a verbatim transcript of the witness's own words.  If the third party's notes only reflect the note-taker's summary characterization of a witness' prior statement, then the notes are irrelevant as an impeaching prior inconsistent statement, and thus inadmissible.  *See United States v. Almonte*, 956 F.2d 27 (2d Cir. 1992).  The burden of proving that notes reflect the witness's own words rather than the note-taker's characterization falls on the party seeking to introduce the notes. *Id*.

Application of these rules of evidence will not prevent the defense from, otherwise, attempting to impeach the witness.  Instead, they assure fair and fundamental process to both sides.  Restrictions on a defendant's presentation of evidence are constitutional if they serve legitimate interests in the criminal trial process and are not arbitrary or disproportionate to the purposes they are designed to serve.  *See Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also Taylor v. Illinois*, 484 U.S. 400, 414-16 (1988).

**B.**     **Government's Motion to Admit Evidence Pursuant to Rules 413 and 404(b)**

As part of the Violent Crime Control and Law Enforcement Act of 1994, Congress enacted Rules 413 through 415 of the Federal Rules of Evidence.  These rules establish special, broad standards for the admission of evidence of a defendant's commission of uncharged offenses of sexual assault or child molestation in cases where the defendant is charged with a federal sexual assault or child molestation offense.  In contrast to Rule 404(b), which only allows uncharged act evidence to be admitted on non-character theories of relevance, Rules 413-415 allow such evidence to be admitted and considered for its bearing "on any matter to which it is relevant."  Thus, in addition to the non-character purposes allowed under Rule 404(b), evidence of other sexual assault or child molestation offenses may be admitted under these Rules to show the defendant's propensity to commit sexual offenses.  Additionally, unlike Rule 404(b), and as discussed below, Rules 413-415 operate under a presumption that evidence of prior sexual assault or child molestation offenses is admissible, and no artificial time limit on the conduct bars this presumption of admissibility.

As described above, the defendant is charged with transporting his then minor stepdaughter, Victim in interstate or foreign commerce with the intent to engage in sexual activity with her in violation of Title 18, United States Code, Sections 2423(a) and 2423(e). Because these crimes involve sexual contact between the defendant and the Victim, these crimes constitute "sexual assault" offenses under Rule 413.  For the reasons discussed below and pursuant to Federal Rules of Evidence 413 or, alternatively, Federal Rule of Evidence 404(b), the United States seeks to introduce evidence of: (1) the defendant's sexual abuse of Victim at times other than on the interstate and foreign trips charged herein; (2) the

defendant's attempted sexual abuse of his minor niece (hereinafter "Minor 2"); and (3) the defendant's viewing of erotica on the Internet.

### 1.   Summary of Rule 413 and 404(b) Evidence to be Admitted[5]

The government will seek to admit the following evidence as part of the government's case in chief:

1.   The defendant grew up with Victim's mother, Amanda Stromecki.   In approximately 2002 or 2003, the defendant and Stromecki began dating.   The Victim is Stromecki's daughter from a previous relationship.   During Stromecki's relationship with the defendant, she worked at a country club, often during the evenings and on the weekends.   As a result, the defendant began to spend considerable amounts of time with Victim alone in his care and custody as well as with other family members.   The defendant acted as largely the primary caregiver during the Victim's recovery from a 2010 car accident that caused her to suffer significant injuries.   Eventually, the defendant and Stromecki married, and he became a stepfather to the Victim.   During the marriage, the defendant and Stromecki had two daughters, including Minor 1.   In 2015, the defendant and Stromecki divorced.   The Victim will describe how the defendant's actions towards her changed following the 2010 car accident and that the sexual abuse began initially with the defendant touching her.   She will further describe that the sexual abuse escalated when the defendant began having vaginal intercourse

---

[5] The government anticipates the proof at trial will show the facts summarized below.  This summary is provided for the purpose of anticipating evidentiary issues and assisting the Court and the parties in conducting the trial efficiently.  This summary should not limit, restrict, or estop the government's overall proof at trial.

with her repeatedly for a period of years.  The defendant often took Victim on interstate and foreign trips.  At times, other family members would accompany them, and at other times, the defendant and Victim travelled alone.  Minor 1 once reported to Stromecki that the defendant and Victim slept in the same bed and pretended they were married on a 2015 out of state trip.  The facts surrounding the defendant's history of sexually molesting the Victim, which the government will seek to admit, are summarized in interview reports of the Victim, Stromecki, and Amber Talrico as well as the recording of the forensic interview of Minor 1, all previously provided to the defense.

2.      Between approximately 2017 and 2018, the defendant's niece, Minor 2 resided with the defendant and his then girlfriend Talarico.  At the time, Minor 2 was approximately 14 or 15 years old.  Minor 2 lived with the defendant and Talarico because she was experiencing difficulties while residing with the defendant's brother, who was recently released from prison.  Talarico will describe an incident in which the defendant became enraged at Minor 2, chased her throughout the house and outside, and eventually locked her outside.  Talarico will further testify that Minor 2 changed her manner of dress to wear revealing clothing and began sitting in a sexually suggestive manner on furniture near the defendant.  The facts surrounding the defendant's history of violent and threatening conduct towards Minor 2 and inappropriate sexual interactions between the defendant and Minor 2, which the government will seek to admit, are summarized in interview reports of Minor 2 and Talarico, all previously provided to the defense.

3.      During the investigation of this case, law enforcement executed a search warrant authorizing the seizure and search of electronic devices at the defendant's residence

on April 1, 2020.   During that search warrant execution, law enforcement seized a HP Pavilion laptop computer.   Subsequent forensic analysis of the computer performed by the Western New York Regional Computer Forensics Laboratory revealed that the defendant's Internet browser history showed he accessed erotic literature categorized as "Taboo-Incest," specifically a story entitled "Daddy's Business" that described an incestuous relationship between a father and daughter in May 2013.

### 2.   Federal Rules of Evidence 413 and 404(b)

In a criminal case, the admissibility of evidence of a prior sexual assault offense is governed by Federal Rule of Evidence 413.   It provides that in "a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault.   The evidence may be considered on any matter to which it is relevant."   Fed. R. Evid. 413(a).   The term "sexual assault" is defined as:

> a crime under federal law or under state law ... involving:
> (1)   any conduct prohibited by 18 U.S.C. chapter 109A;
> (2)   contact, without consent, between any part of the defendant's body or an object and another person's genitals or anus;
> (3)   contact, without consent, between the defendant's genitals or anus and any part of another person's body;
> (4)   deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or
> (5)   an attempt or conspiracy to engage in conduct described in subparagraphs (1) (4).

Fed. R. Evid. 413(d).

In contrast, under Rule 404(b), evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person."   Rule 404(b) does not bar the admission of such bad-act evidence; it merely limits the purposes for which such evidence may be

introduced, such as to prove motive, intent, plan, lack of accident and other specified reasons aside from character. *Huddleston v. United States*, 485 U.S. 681 (1988). If offered for a proper purpose, and not a prohibited one (such as that the defendant acted in conformity with bad character), evidence of uncharged wrongs is "subject only to general strictures limiting admissibility such as Rules 402 and 403." *Id.* at 688. Thus, such evidence need not be subjected to additional scrutiny beyond that provided in the rules of evidence, and "should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act." *Id.* at 685. No separate finding by the trial court is required.

Applying the principles outlined in *Huddleston*, courts in the Second Circuit take the "inclusionary" approach, "which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011); s*ee also United States v. Ortiz*, 857 F. 2d 900, 903 (2d Cir. 1988), *cert. denied*, 109 S. Ct. 1352 (1989); *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989). The Second Circuit has articulated a four-part test in analyzing the admissibility of evidence pursuant to Rule 404(b): "(1) the prior crimes evidence was 'offered for a proper purpose'; (2) the evidence was relevant to a disputed issue; (3) the probative value of the evidence was substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) the court administered an appropriate limiting instruction[6]." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009), *citing Huddleston*, 485 U.S. at 691.

---

[6] The government has no objection to a limiting instruction if the defendant requests one.

Rule 413 creates an exception in sexual assault cases to the general bar on propensity evidence under Rule 404(b). *United States v. Levy*, 594 F. Supp. 2d 427, 438 (S.D.N.Y. 2009). In essence, Rule 413 established that "evidence that a defendant engaged in child molestation [or sexual assault] in the past is admissible to prove that the defendant has a propensity to commit, or a disposition of character that makes it more likely that he did commit, the act of child molestation charged in the instant case." *Id.* at 439. Prior to its admission, such propensity evidence must comply with the rules against hearsay, and its probative value must outweigh the danger of unfair prejudice to the defendant. *Id.* However, "in sexual assault and child molestation cases, the presumption is that the probative value of the propensity evidence is not outweighed by the risk of unfair prejudice." *Id.*, *citing United States v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997); *see also United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) (noting that Rules 413 and 414 are an express "exception to the usual proscription against admission of prior crimes to prove the character of a person in order to show action in conformity therewith.").

Other circuits have consistently confirmed Rule 413's broad principles of admissibility. *See United States v. Johnson*, 2012 WL 266921 (10th Cir. Jan. 31, 2012) (evidence of prior uncharged sex offenses involving strangers properly admitted under Rules 413 and 404(b)); *United States v. Kelly*, 510 F.3d 433 (4th Cir. 2007) (admission of prior attempted rape conviction of 12-year-old warranted in prosecution for traveling in interstate commerce for purpose of engaging in illicit sexual conduct even though prior offense occurred 22 years earlier); *United States v. Guidry*, 456 F.3d 493 (5th Cir. 2006) (admission of uncharged sexual assaults including forced oral copulation of woman admissible in trial of police officer charged

with multiple sexual assaults against women); *United States v. Seymour*, 468 F.3d 378 (6th Cir. 2006) (defendant's uncharged prior sexual assaults against adult females admissible in case charging child molestation offenses); *United States v. Gabe*, 237 F.3d 954 (8th Cir. 2001) (witness testimony that defendant had sexually abused victim 20 years prior to instant charge admissible); *United States v. Sioux*, 362 F.3d 1241 (9th Cir. 2004) (district court properly admitted evidence of the defendant's prior act of sexually assaulting a minor victim in a child molestation case); *United States v. Breitweiser*, 357 F.3d 1249 (11th Cir. 2004) (prior sexual conduct against minors admissible); *United States v. Lewis*, No. 07-3143, 2009 WL 377302 (D.C. Cir. Jan. 23 2009) (evidence that defendant possessed child pornography admissible in prosecution for attempted coercion and enticement of a minor).

### 3.   <u>Legislative History and Policy</u>

Congress enacted Federal Rules of Evidence 413-415 as part of the Violent Crime Control and Law Enforcement Act of 1994.  Pub. L. No. 103-322, 108  Stat. 1796 (1994). These Rules are designed to "supersede in sex offense cases the restrictive aspects of Federal Rule of Evidence 404(b)" and to create a presumption that "evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects."  140 Cong. Rec. H8991-92 (1994) (remarks of principal House sponsor, Rep. Molinari); *see also* 140 Cong. Rec. S12990; David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi. Kent. L. Rev. 15, 19 (1994).[7]  The legislative sponsors of Rules 413-415 further noted that:

---

[7] The principal sponsors of Rules 413-415 noted that an address delivered to the Evidence Section of the Association of American Law Schools by David J. Karp, then Senior Counsel at the Office of Policy Development at the Department of Justice and the drafter of Rules 413-415, was to serve as an "authoritative" part of the Rules' legislative history.  *See* 140 Cong. Rec. 23,602 (1994).  This legislation was initially proposed

The reform effected by these rules is critical to the protection of the public . . . [a]nd is justified by the distinctive characteristics of the cases to which it applies. In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant – a sexual or sado-sexual interest in children - that simply does not exist in ordinary people.

Moreover, such cases require reliance on child victims whose credibility can readily be attacked in the absence of substantial corroboration.  In such cases, *there is a compelling public interest in admitting all significant evidence that will shed some light on the credibility of the charge and any denial by the defense.*

*Id.* (emphasis added).

Furthermore, Congress recognized and intended that this approach would make the admission of similar crimes evidence in federal sex offense cases the norm, and its exclusion the exception, even in instances where there is a substantial lapse in time between the charged conduct and the prior acts.  The legislative sponsors noted:

The practical effect of the new rules is to put evidence of uncharged offenses in sexual assault and child molestation cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule.  *The presumption is in favor of admission.*  The underlying legislative judgment is that the evidence admissible pursuant to the proposed rules is typically relevant and probative, and that its probative value is normally not outweighed by any risk of prejudice or other adverse effects.

In line with this judgment, the rules do not impose arbitrary or artificial restrictions on the admissibility of evidence.  Evidence of offenses for which the defendant has not previously been prosecuted or convicted will be admissible, as well as evidence of prior convictions.  No time limit is imposed on the uncharged offenses ... as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted, notwithstanding substantial lapses of time in relation to the charged offense or offenses.

---

in February 1991 in the Women's Equal Opportunity Act and subsequently reintroduced in the Sexual Assault Prevention Act bills of the 102d and 103d Congress.  *See* 137 Cong. Rec. S3212, 3238-42 (1991) (bill text and original Senate sponsors' statement).

140 Cong. Rec. H8992 (1994) (Statements of Rep. Molinari and Senator Dole) (emphasis added); *See also* 137 Cong. Rec. S3212, S338-3242 (1991); Karp, 70 Chi. Kent L. Rev. at 19.

### 4.    Discussion

The defendant through his conduct and history has demonstrated a clear sexual interest in minor female children, specifically his stepdaughter.  This is evident from his prior conduct and the evidence that has been gathered in this case.  The defendant's sexual abuse of Victim, his violent and sexually inappropriate interactions with Minor 2, and his interest in incestuous erotic literature, constitutes offenses of sexual assault and are admissible at trial pursuant to Federal Rules of Evidence 413.  Alternatively, the evidence outlined above is admissible pursuant to Federal Rule of Evidence 404(b).  The three evidentiary items sought to be admitted clearly constitute a "sexual assault" offense as defined in the Rules.

All five counts of the Superseding Indictment constitute a sexual assault offense under Rule 413 because the conduct involved the defendant engaging in forcible sex acts with the Victim.  As such, since the current charges the defendant is accused of qualify under Rule 413, and the prior offenses qualify under Rule 413, the prerequisites for admission of such evidence have been satisfied.

The evidence the government seeks to admit is highly relevant to the current charges because it illustrates the defendant's sexual interest in minor females in his custody and care. The evidentiary topics summarized above that the government seeks to be admitted are central to providing the jury with a complete narrative regarding the defendant's long-

standing pattern of grooming minor females and ultimately sexually assaulting or attempting to sexually molest them.  Admission of this evidence will provide the proper framework for the jury to understand many of the Victim's actions in this case, including why Victim continued to have contact and travel with the defendant after having been sexually abused by him for years, and why Victim did not immediately disclose the defendant's abuse.  The first evidentiary item that the government seeks to be admitted is particularly relevant and extremely probative because it involves sexual contact with the charged Victim, in a manner consistent with the charged offenses.  In addition to being admissible as propensity evidence under Rules 413, such evidence is admissible under Rule 404(b) as it bears directly on the defendant's intent in transporting the victim, his common plan and scheme of sexually assaulting the Victim, and his opportunity to commit the charged crimes.

As described above, the government must prove the defendant's intent.  "[M]ost evidence" of a person's state of mind "is circumstantial."  *United States v. Salameh*, 152 F.3d 88, 143 (2d Cir. 1998) (making this observation concerning evidence of intent).  Thus, *any* indirect evidence of a defendant's state of mind is often highly probative.  *See Old Chief v. United States*, 519 U.S. 172, 184 (1997) (noting that the probative value of evidence "may be calculated by comparing evidentiary alternatives").  "Put differently, when there are few ways to prove an element of a crime, any evidence that tends to prove that element necessarily has more probative value than it otherwise might."  *United States v. Krug*, 15-CR-157-A, 2017 WL 907817, at *4 (W.D.N.Y. Mar. 8, 2017).  Because evidence of intent is almost always circumstantial, any direct evidence that tends to show that intent takes on increased importance.

Allowing the government to present a complete narrative of the defendant's history of sexual assaulting the Victim is of paramount importance to the government's obligation to "place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much as to point to the discrete elements of a defendant's legal fault." *Old Chief*, 519 U.S. at 188. In *Old Chief*, a felon in possession of a firearm case, the Supreme Court addressed whether it was an abuse of discretion for a district court to reject a defendant's offer to stipulate to a prior felony conviction, and in doing so, touched on the government's role of presenting evidence that tells a "colorful story with descriptive richness," so that a jury can perform its function to return an "honest verdict." *Id.* at 187. However, the Supreme Court also noted that the government's interest in presenting evidence of its choice is tied to a jury's expectations as to what the proper proof should be:

> Expectations may also arise in jurors' minds simply from the experience of a trial itself. The use of witnesses to describe a train of events naturally related can raise the prospect of learning about every ingredient of that natural sequence the same way. If suddenly the prosecution presents some occurrence in the series differently, as by announcing a stipulation or admission, the effect may be like saying, "never mind what's behind the door," and jurors may well wonder what they are being kept from knowing. A party seemingly responsible for cloaking something has reason for apprehension, and the prosecution with its burden of proof may prudently demur at a defense request to interrupt the flow of evidence telling the story in the usual way.
> ...
> People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Id.* at 188-89.  Here, if the evidence sought to be admitted is excluded, the victim will be denied the opportunity to tell the jury the true circumstances that led to her continued interaction with the defendant and repeated travel on interstate and foreign trips with the defendant where sexual abuse occurred.  That is, the fact that being sexually abused by the defendant was so ingrained in her life, that it did not matter to her whether she travelled with the defendant or not.  In her mind, the abuse was going to continue regardless.  Therefore, separate and apart from any rule of evidence, the first evidentiary item sought to be admitted is inextricably intertwined with the charged offenses and is a critical component of the complete narrative the government is entitled to present to the jury.

The second and third evidentiary items sought to be admitted are highly relevant of the defendant's sexual attraction to minor females.  The grooming process the defendant attempted to utilize with Minor 2, and the defendant's interested in incestuous erotic literature are strikingly similar to the grooming and sexual abuse of the Victim.  In a case such as this, where the defense theory will likely be that the Victim is lying, there can be no better evidence regarding the defendant's common plan and scheme than the testimony regarding Minor 2 and the defendant's own conduct.  Evidence that the defendant violently threatened and inappropriately interacted with Minor 2 and sought out incestuous erotic literature on the Internet will support the government's argument regarding the defendant's intent in transporting the Victim in interstate or foreign commerce, and will corroborate the testimony of the Victim.

Moreover, the Victim's testimony regarding sexual abuse occurring outside the charged trips is particularly important because the defendant called his now wife while he was in custody. During that call, which was recorded by the jail facility, the defendant is heard stating that Victim is "saying it is rape rape" and instructing his wife to research the ages of consent in various states. This conduct clearly evidences a consciousness of guilt and demonstrates that the full history of sexual abuse is inextricably intertwined with the logical narrative that will be presented by the Victim and other witnesses. Most importantly, such evidence also is probative of the defendant's motive, opportunity, and intent in transporting the Victim in interstate or foreign commerce.

Similarly, the defendant's threatening and inappropriate conduct towards Minor 2 and Internet browser history for incestuous erotic literature illustrates not only his propensity to commit the charged offenses, but his sexual interest in minor female family members and puts into context the true reason for the defendant's transportation of the Victim in interstate or foreign commerce.

Rule 403 balancing still applies in assessing the admissibility of Rule 413 evidence. *See Larson*, 112 F.3d at 604. Nonetheless, courts have adjusted the Rule 403 analysis based on the strong policies underlying Rules 413-415 that weigh strongly in favor of admitting defendants' prior acts of sexual assault. In this case, the Rule 403 balancing weighs in favor of admitting the evidence of the defendant's prior acts of sexual assault. There is a striking similarity to the prior bad acts and the charged offenses, which enhances the probative value of the evidence. The government concedes that evidence of the defendant's prior sexual

assault offenses may be prejudicial; however, such prejudice would not be unfair.  *See Levy*, 594 F. Supp. 2d at 440.  It was the defendant that chose to engage in the prior offenses and conduct, and because the prior offenses and conduct bear directly on the defendant's intense sexual attraction to minor female family members, such evidence is highly probative.

In the event the Court determines that the defendant's prior offenses for sexual assault should not be admitted pursuant to Rule 413, such evidence is clearly admissible pursuant to Rule 404(b).  The prior bad acts of sexual assault by the defendant help establish: (1) the defendant's motive and intent to engage in sexual acts with Victim, (2) the defendant's common plan, scheme, and modus operandi to sexually assault the Victim during interstate or foreign trips, and (3) that the defendant's conduct was not by accident or mistake.  In essence, the defendant's prior bad acts demonstrate the defendant's longstanding pattern of sexually inappropriate conduct involving young female family members in his custody, which bears directly on his motive and intent to commit the present crimes.

**C.**     **Government's Motion to Exclude All Evidence Regarding the Outcome of the Defendant's July 2021 Wyoming County Trial**

From July 19 to July 21, 2021, the defendant was tried for Predatory Sexual Assault, a violation of New York State Penal Law.  On the third day of the trial, the trial court granted a trial order of dismissal and dismissed an indictment.  This state court trial dealt with wholly different incidents and criminal charges, with different elements, than the federal charges that the defendant presently stands charged with in this Court.  The government moves to exclude all evidence regarding the outcome of the defendant's July 2021 Wyoming County trial.

Motions *in limine*, when granted, operate to exclude inadmissible or prejudicial evidence before it is actually offered at trial.   *See Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).   This aids the trial process by narrowing evidentiary issues and decreasing trial interruptions.   *See Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996).   The Supreme Court made it clear that a criminal defendant has a constitutional right, grounded in the Sixth Amendment's Compulsory Process and Confrontation Clauses and the Fourteenth Amendment's Due Process Clause, to "a meaningful opportunity to present a complete defense."   *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).   "Few rights are more fundamental than that of an accused to present witnesses in his own defense."   *Chambers*, 410 U.S. at 284.   However, this right to a complete defense is not without limits, and "may in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."   *Id*. at 295; *see also, Jimenez v. Walker*, 458 F.3d 130, 147 (2d Cir. 2006) (the right to present a defense is not limited).

Instead, when presenting a defense, a defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability," *Chambers*, 410 U.S. at 302.   For instance, the defense does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence," *Taylor v. Illinois*, 484 U.S. 400, 410 (1988); *see also, Clark v. Arizona*, 548 U.S. 735 (2006).   In addition, it is not unconstitutional to restrict the defense presentation of evidence if such restrictions serve legitimate interests in the criminal trial process, *Rock v. Arkansas*, 483 U.S. 44, 55 (1987), *quoting Chambers*, 410 U.S. at 93, and are not "arbitrary or disproportionate to

the purposes they are designed to serve." *Id.*, 483 U.S. at 56; *see also, Taylor*, 484 U.S. at 414-16.

Under Rule 403, a district court may exclude evidence if it finds that the "'the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' Fed.R.Evid. 403." *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002).

The government seeks a ruling from the Court that the parties are barred from introducing evidence of the defendant's July 2021 Wyoming County trial outcome and that witnesses have previously testified in that trial. The government concedes that it is proper for either party to impeach a witness with prior inconsistent testimony (or consistent testimony if legally permissible) from the July 2021 Wyoming County trial. The parties, however, should not be allowed to refer to the testimony as coming from a prior trial involving the same defendant and victim, the outcome of the trial as a "trial order of dismissal," "dismissal," "acquittal," "not guilty verdict," or some other reference to a previous trial, the defendant and witnesses involving, and its outcome.

The government requests that should a need arise to refer to the July 2021 Wyoming County trial transcript, the parties be required to refer to testimony taken at a "proceeding" or "hearing" without the mention of the state trial. *See* L. Sand, *et al., Modern Federal Jury Instructions: Criminal* (2106) Instruction 2-13, cmt. (noting that "many jurisdictions proscribe

any reference to previous trials, using instead references to a 'a prior proceeding'"). This would allow the parties to use prior testimony when relevant but exclude the parties from mentioning the wholly irrelevant prior trial.

The government further requests that the defendant be barred from introducing evidence of the trial order of dismissal in the July 2021 Wyoming County trial. This outcome is highly irrelevant, confusing, and holds no probative value as to the wholly separate and different federal charges that will be the basis of the trial before this Court. As described above, the defendant is charged in the instant case with five counts of Transportation of a minor, in violation of Title 18, United States Code, Section 2423(a) and (e). That federal charge has different elements than the state charge that the defendant faced in the July 2021 Wyoming County trial. Here, the government must prove beyond a reasonable doubt that the defendant transported or attempted to transport a minor in interstate or foreign commerce with the intent to have illegal sexual conduct. Therefore, the outcome of the state trial has no probative value, much less relevance to the verdict in this case. Each jury is its own ultimate factfinder. To allow a jury to hear a prior outcome in a different court in a different case would improperly infringe upon or even usurp the jury's role here. When the lack of probative value of any mention of the prior is weighed against the likelihood that it would confuse and/or mislead the jury in this case, such evidence is unfairly prejudicial to the government and must be excluded. *See* Fed. R. Evid. 403; *United States v. Hicks*, No. 15-CR-33-A, 2018 WL 1789932, at *2 (W.D.N.Y. Apr. 16, 2018) (granting government's motion *in limine* to bar mention of prior trial); *cf. United States v. De La Rosa*, 171 F.3d 215, 219 (5th Cir. 1999) ("[A]s a general matter, a trial court does not abuse its discretion in excluding evidence of a prior

acquittal on a related charge . . . Evidence of a prior acquittal is not relevant because it does not prove innocence but rather merely indicates that the prior prosecution failed to meet its burden of proving beyond a reasonable doubt at least one element of the crime.") (quotation marks and brackets omitted).

### D.    Government's Motion to Admit Jail and Other Phone Call Recordings

In this case, the government may seek to admit as evidence in its case in chief jail call recordings[8] and a record phone conversation between the defendant and Victim.  The jail recordings occur when telephone calls made by the defendant from local jail facilities are recorded in the ordinary course of business.  The recording of a phone conversation between defendant and the Victim was made on March 17, 2020.  To the extent that these recordings incriminate the defendant, or are otherwise useful to the government's case, they are admissible at trial as the defendant's statements, as described above.  Although the government does not anticipate any particular issues to arise as a result of the admission of such evidence, the government seeks a ruling regarding the admissibility of such evidence.

### 1.    Authentication and Admission into Evidence

The government may seek to introduce consensually recorded conversations derived from the various jail recordings.  These conversations may be offered through the testimony of a jail administrator familiar with the manner in which conversations are monitored and recorded.    These  administrators  will  testify  that  each  defendant  obtains  a  personal

---

[8] The government would not seek to elicit why the defendant was in jail at the time of the call.

identification number which permits the inmate to utilize the phone system, which allows the facility to identify which inmate is utilizing the phone system.  Additionally, during many of the calls, the inmate self-identifies by name at the beginning of the call where there is a recorded warning which advises both the inmate, and the recipient of the call, that the call is subject to monitoring and recording.  As set forth below, it is not necessary for the government to authenticate the recordings by someone who either participated in or personally overheard the subject matter of the recordings.  *See United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977) ("There simply is no requirement that the tapes be put in evidence through the person wearing the recorder or, for that matter, through a contemporaneous witness to the recorded conversation.").

Finally, all of the recordings which the government may seek to introduce at trial will fall into the following category - recorded conversations to which the defendant was a party and, as such, the conversations were admissions by a party-opponent and not hearsay pursuant to Fed. R. Evid. 801(d)(2)(a).  *United States v. Quintana*, 70 F.3d 1167 (10th Cir. 1995).

## 2.   Voice Identification

The government expects that law enforcement officers, who know, or spoke with, the defendant, may make voice identifications of the defendant at trial, made during jail calls. These identifications will be based on their familiarity with the defendant's voice.  These witnesses, along with other government witnesses, will also make in-court identifications of the defendant.

Rule 901 of the Federal Rules of Evidence provides in pertinent part:

(a) General provision.  The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) Illustrations.  By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

*   *   *

(5) Voice identification.  Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon <u>hearing the voice at any time</u> under circumstances connecting it with the alleged speaker.

The Second Circuit endorsed the proposition that only a minimal familiarity with a person's voice is sufficient to support voice identification.  *United States v. Albergo*, 539 F.2d 860 (2d Cir. 1976).  In *Albergo*, the Second Circuit dealt at length with the admissibility of a taped conversation.  The trial court had permitted an officer to make a voice identification of the defendant where the officer had listened to the appellant's voice in over 500 taped conversations and had heard the appellant talking at a bar with other individuals.  *Id.* at 863.  In affirming the admission of this voice identification and the admissibility of intercepted conversations, the Second Circuit stated:

> A telephone conversation is admissible in evidence if the identity of the speaker is satisfactorily established, *United States v. Biondo*, 483 F.2d 635 (8th Cir. 1973), and the question is for the jury if, as reasonable men, they could find the claimed identification to be accurate.  *United States v. Alper*, 449 F.2d 1223, 1229 (3d Cir. 1971).  Identification may be based upon a subsequent acquaintanceship with the speaker.  *United States v. Borrone-Iglar*, 468 F.2d 419 (2d Cir. 1972) (per curiam).  Indeed, it may be adequate, although the persons involved have never personally met.  *United States v. Chiarizio*, 525 F.2d 289 (2d Cir. 1975).  Impossibility of error is not a prerequisite to the admissibility of evidence.  *United States v. Wilkes*, 451 F.2d 938, 939 (2d Cir. 1971); *United States v. Easterday*, 57 F.2d 165, 167 (2d Cir. 1932).  Where, as here, the identifying officer had listened to appellant's voice in over 500 taped conversations, his

testimony was sufficient to permit the jury, as reasonable men, to identify appellant as the "Philip" who participated in the four conversations at issue.

Moreover, the requirements for voice authentication do not differ markedly from those for document authentication.  Once a *prima facie* case of authorship is made out by the proponent of the evidence, the testimony is admissible; and the reliability of the identification is for the jury.  *Carbo v. United States*, 314 F.2d 718, 743 (9th Cir. 1963).

*Id.* at 863-64; *see also United States v. Armedo-Sarmiento*, 545 F.2d 785, 792 (2d Cir. 1976) (finding that the voice identification was a question for the jury); *United States v. Santos-Cruz*, 2000 WL 326191, *4 (E.D. Pa. Mar. 15, 2000) (finding tapes admissible where officer "listened to every intercepted call and developed and voice identification on each individual intercepted" and also interviewed each defendant following their arrests).  As such, their identifications are admissible under Rule 901.[9]  *See United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001) ("A trial court has broad discretion to determine whether a piece of evidence has been properly authenticated and its ruling will not be reversed absent an abuse of discretion."); *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977) ("[T]his Circuit has never expressly adopted a rigid standard for determining the admissibility of tape recordings.").[10]

---

[9] Rule 901 "provides a non-exhaustive list of 'examples of authentication or identification conforming with the requirements of this rule.'"  *United States v. Tropeano*, 252 F.3d 653, 661 (2d Cir. 2001), quoting Fed. R. Evid. 901(a).

[10] "Authentication merely renders the tapes admissible, leaving the issue of their ultimate reliability to the jury."  *Tropeano*, 252 F.3d at 661.

2.    **Audibiltiy**

Although the recordings which the government may introduce at trial are audible, in the unlikely event that the defendant raises the issue, the government observes that the mere fact that portions of a recording are inaudible does not require exclusion of the recording. "Unless the unintelligible portions are so substantial as to render the recordings as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the judge." *Arango-Correa*, 851 F.2d 54.

DATED:  Buffalo, New York, June 8, 2022.

Respectfully submitted,

TRINI E. ROSS
United States Attorney

***S/ MAEVE E. HUGGINS***

BY:    _____

MAEVE E. HUGGINS
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5872
Maeve.Huggins@usdoj.gov

***S/ PAUL E. BONANNO***

BY:    _____

PAUL E. BONANNO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5873
Paul.Bonanno@usdoj.gov