UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                           Case No. 21-CR-15-JLS-JJM

NICHOLAS TURNQUIST,

                Defendant.

# DEFENDANT NICHOLAS TURNQUIST'S
# RESPONSE TO THE GOVERNMENT'S PRETRIAL MEMORANDUM (ECF 109)



*Attorneys for Nicholas Turnquist*
Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York  14221
(716) 222-3288
rob@singerlegalpllc.com

Defendant Nicholas Turnquist (hereinafter, "defendant" or "Mr. Turnquist") submits this memorandum in response to the government's pretrial memorandum.

### I. If admitted, the Court should enact certain limitations on Dr. Turner's testimony (Section V(F) at 14-16).

The government has disclosed its intention to call Dr. Darrel Turner as an expert witness in this case. Dr. Turner will purportedly testify regarding common behavior of victims of sexual abuse/assault, delayed disclosures of such abuse by victims, "counterintuitive behavior" exhibited by victims, the "characteristics of adults" who sexually victimize children, and "grooming" techniques used by offenders to perpetrate such assaults. *See* ECF 107 at 1-2. According to the government, "[h]is testimony will focus on issues relating to child sexual abuse that are often outside the common knowledge and understanding of a juror." *See id.* at 1. The government further posits that his testimony "will provide context for the jury to better understand the power dynamics of child sexual abuse and behavior consistent with abuse that are an unfamiliar world to the common juror." *See id.* at 2.

The defense does not contest that Courts have admitted such testimony in the past. Based on his CV, Dr. Turner appears to have experience in both of these areas. However, since voir dire has not been conducted at this time, the parties and the Court are unaware if victim behavior and grooming are "unfamiliar" to the petite jury or if the jury holds any such beliefs or "myths" on the subject that may need to be addressed. Until it is ascertained that this is a legitimate concern, this Court is unable to conclude that the proposed testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." *See* FRE 702(a). Consequently, the Court should not rule on the admissibility of this testimony until after voir dire is complete.

If after voir dire this Court finds that Dr. Turner's testimony is admissible and relevant to the proceedings, then it should enact reasonable limitations on the scope of his testimony. First, the Court should bar the government from eliciting any testimony (and Dr. Turner

from offering any testimony) which attempts to apply Dr. Turner's opinions and views to the specific facts of this case as well as the testimony or the reactions of the Alleged Victim or any other witness presented by the government. Such testimony goes beyond the scope of Rule 702, constitutes improper bolstering and "human-lie-detector" testimony, and invades the province of the jury. *See Nimely v. City of N.Y.*, 414 F.3d 381, 397-98 (2d Cir. 2005) ("It is a well-recognized principle of our trial system that 'determining the weight and credibility of [a witness's] testimony. . . belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men . . . .' *Aetna Life Ins. Co. v. Ward*, 140 U.S. 76, 88, 35 L. Ed. 371, 11 S. Ct. 720 (1891); *see also United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1998) ("The credibility of witnesses is exclusively for the determination by the jury, and *witnesses may not opine as to the credibility of the testimony of other witnesses at the trial.*" (internal citation omitted and emphasis added)). Thus, this court, echoed by our sister circuits, has consistently held that expert opinions that constitute evaluations of witness credibility, even when such evaluations are rooted in scientific or technical expertise, are inadmissible under Rule 702.").

Second, the Court should exclude any opinion or testimony that "victims *typically* engage in counterintuitive conduct." *See* ECF 107 at 1. The purpose of Dr. Turner's testimony is to *educate* jurors and to disabuse "myths" held by jurors about how a victim "does" or "should" react to such abuse. However, the purpose of this testimony is not to *tell* jurors that victims "typically" (or always) react to such abuse in a certain way. Any testimony offered by Dr. Turner that states that victims "typically" delay disclosure or exhibit counterintuitive behavior goes beyond the purpose of his testimony (to aid the fact-finder with evaluating testimony and evidence) and, instead, invades the role of the jury to make such independent determinations by having the "expert" tell the jury *how* to view the evidence. This testimony is improper under Rule 702 and should be excluded. *See Nimley*, 414 F.3d. at 397-98; *see also United States v. Maxwell,* No. 20-CR-330 (AJN), 2021 U.S. Dist.

2

LEXIS 220399, at *13 (S.D.N.Y. Nov. 11, 2021) (admitting such expert testimony because it "would assist the jury in understanding concepts that require expert knowledge without directing the jury to reach any conclusion as to a witness's credibility."). What's more, expert opinion testimony that *all* or *most* victims of sexual abuse delay disclosure or exhibit counterintuitive behavior is not grounded in scientific fact or a widely held belief in the field and, thus, is not admissible under FRE 702. Consequently, the Court should limit Dr. Turner's testimony to discussion about how victims of abuse display a wide range of reactions and disclose abuse on varying timelines. This testimony does not direct the jury to draw any specific conclusion and, instead, properly leaves that decision to the jury.

Third, the Court should exclude any testimony about "the characteristics of adults who sexually victimize children." *See* ECF 107 at 2. This testimony constitutes improper "characteristic profile" evidence that is inadmissible under FRE 404(a)(1). As a recent opinion from the Navy-Marine Corps Court of Criminal Appeals aptly explains:

> "Generally, use of any characteristic 'profile' as evidence of guilt or innocence in criminal trials is improper." *United States v. Banks*, 36 M.J. 150, 161 (C.M.A. 1992). "Profile evidence is evidence that presents a 'characteristic profile' of an offender, such as a pedophile or child abuser, and then places the accused's personal characteristics within that profile as proof of guilt." *United States v. Traum*, 60 M.J. 226, 234 (C.A.A.F. 2004) (citations omitted). Thus, "the focus is upon using a profile as evidence of the *accused's* guilt or innocence, and not upon using a characteristic profile to support or attack a witness's or victim's credibility or truthfulness." *United States v. Brooks*, 64 M.J. 325, 329 (C.A.A.F. 2007) (emphasis in original).
>
> "[T]he ban on profile evidence exists because this process treads too closely to offering character evidence of an accused in order to prove that the accused acted in conformity with that evidence on a certain occasion and committed the criminal activity in question." *Traum*, 60 M.J. at 235. The prohibition thus "is rooted in MRE 404(a)(1) that precludes the prosecution from introducing character evidence of an accused who has not put his character at issue." *Banks*, 36 M.J. at 161. As "[o]ur system of justice is a trial on the facts, not a litmus paper test for conformity with any set of characteristics, factors, or circumstances," profile evidence can be admitted "only in narrow and

3

> limited circumstances," to include "as purely background material to explain sanity issues[,] . . . as an investigative tool to establish reasonable suspicion[,] . . . [or] in rebuttal when a party 'opens the door' by introducing potentially misleading testimony." *Id.* (citations omitted).

*United States v. Mellette*, 81 M.J. 681, 696-97 (N-M Ct. Crim. App. 2021). Here, the prohibition regarding such evidence embodied in Military Rule or Evidence 404(a)(1) and discussed in *Mellette* mirrors the same prohibition on such evidence in FRE 404(a)(1). In this case, the government should not be permitted to elicit testimony from Dr. Turner regarding the "characteristic profile" of a child sex abuser and then use that testimony to argue that Mr. Turnquist fits the profile and is, therefore, guilty of the counts alleged in the superseding indictment.

Fourth, the Court should not permit Dr. Turner to testify until *after* the Alleged Victim testifies. This is consistent with the fact that the defense must first raise an issue regarding the credibility of the Alleged Victim's claims to make this evidence relevant. Furthermore, the Court should limit Dr. Turner's testimony to the government's rebuttal case only. *See, e.g., United States v. Heller*, No. 19-cr-00224-PAB, 2019 U.S. Dist. LEXIS 177602, at *7 (D. Colo. Oct. 11, 2019) ("The Court believes that, if [the government's counterintuitive behavior/grooming expert] testified in the government's case-in chief, the jury could mistakenly interpret [the expert's] testimony as inappropriately bolstering the alleged victim's credibility as opposed to explaining the dynamics of grooming or delayed reporting. As a result, the Court will limit Ms. Blackwell's testimony to the government's rebuttal case.").

II. **The Court should permit the defense to call all minor witnesses by their first names or, in the alternative, use nomenclature acceptable to the parties (Section V(G) at 16-18).**

The government has moved for an order directing all references to Minor 1 (M.T.) during trial use a pseudonym. The defense opposes this request. Initially, it is important to note

4

that the government and the defense are in discussion regarding this issue and hope to be able to resolve the issue without the need for judicial intervention. In the event that is not possible, the defense proposes that first names should be used only.

First, the defense has concerns that an inability to call a witness by their first name and only as a pseudonym is prejudicial to Mr. Turnquist. The defense expects to cross-examine Minor 1 who is 12 years old. Referring to Minor 1 as a pseudonym rather than her real name impacts the ability of the defense to conduct effective cross-examination. A 12-year-old is not an adult and is not capable of maintaining awareness of the pseudonym. Second, use of the pseudonym will be confusing to the jury. There are possibility three minor witness who may be called to testify and each of them is related to Mr. Turnquist. Reference to these persons as "Minor" will contribute to confusion, particularly during summation, as to what person/witness the government and defense are referring to. Third, the defense has reviewed the cases cited by the government. While the defense does not disagree that pseudonyms have been employed in stranger-based trafficking cases, those cases are different from the case at bar because the alleged victim may not have been known to other defendants in the conspiracy. As a result, a witness safety concern may have existed. Here, that is not the case – everyone knows these minors, including the defendant, as they are relatives.

For these reasons, the Court should consider using the witness's first name or another alternative derived by the parties.

### III. Response to the government's FRE 413/404(b) Motion (Section VI(B) at 27-40).

The government seeks to admit three pieces of evidence under FRE 413 or, in the alternative, FRE 404(b). This evidence concerns: (1) the defendant's alleged sexual abuse of the Alleged Victim "at times other than on the interstate and foreign trips charged herein;" (2) the

5

defendant's "attempted sexual abuse of his minor niece (hereinafter "Minor 2");" and (3) the defendant's "viewing of erotica on the Internet." *See* ECF 109 at 27-28.  For the reasons set forth below, this evidence either does not meet the criteria for admissibility, fails the FRE 403 balancing test, or should be limited by the Court.

### A. Admissibility of alleged sexual abuse of the Alleged Victim at other times not charged in the indictment pursuant to FRE 413.

As an initial matter, the Court should deny the government's request because of insufficient notice.  While it is true that FRE 413(b) does not require the government to provide notice using "talismanic language," the government still must provide adequate notice describing the general nature of the evidence it seeks to admit.  In this regard, the government has failed.

For example, the government states in tis motion in limine that the defendant "touch[ed]" the Alleged Victim and had "vaginal intercourse with her."  The first of these allegations ("touching") fails to specify how the alleged contact meets the definition of "sexual assault" under FRE 413(d).  The notice does not describe how the alleged contact involved the genitals or anus.  *See* FRE 413(d)(2)&(3).  It also does not describe how the contact was committed with the purpose of sexual pleasure or gratification.  *See* FRE 413(d)(4).  And the notice (or motion) provides no analysis regarding what federal statutes may have been violated in consummating these acts.  In other words, the Court is left to guess regarding how this evidence satisfies the definition of "sexual assault" under FE 413(d).  This is particularly true here because the government's motion references "interview reports" provided to the defense in discovery, but the notice and motion neither identifies *which* reports contain this information nor provides a copy of these reports to the Court so that it can understand why these acts constitute "sexual assault."  *See* ECF 109 at 29.

The second deficiency in the government's Rule 413 notice is that it fails to specify the general time frame that other acts of "sexual assault" occurred.  For example, the government

6

generally states that the defendant's conduct with the Alleged Victim "changed" following her accident in 2010, *see id.* at 28, but then states *nothing* about the date the "sexual abuse" actually started.  Further still, the government fails to specify how long the other acts of "sexual abuse" continued for and when they stopped.  This is problematic because the defense (and the Court) is not in a position to evaluate the nature of the claims using other evidence.[1]  The Court also is unable to evaluate whether these alleged acts occurred when the Alleged Victim was a minor (when consent is not an issue) or when she was an adult or above the legal age of consent in New York (when consent is an issue).  This is why specifying dates is important to the analysis.  Since the government failed to specify anything, its notice is inadequate.

As the proponent of the evidence, the government has the burden to make a preliminary showing regarding how the evidence it seeks to admit meets the criteria set forth in FRE 413.  If the government fails to make such a showing, then the Court does not possess sufficient facts to act as a gatekeeper under FRE 104 and make an informed evidentiary ruling, containing findings of fact and conclusions of law, explaining why the government satisfied Rule 413.  Absent presentation of such predicate facts, the Court should deny the government's motion to admit this evidence.

In addition to the objection above, the Court should exclude – or significantly narrow – the scope of the proposed evidence.  As the Second Circuit has made clear, admissibility of FRE 413 evidence remains subject to the FRE 403 balancing test.  *See United States v. Schaffer*, 851 F.3d 166, 180 (2d Cir. 2017).  Under FRE 403, the Court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues,

---

[1] For example, the Alleged Victim provided varying accounts of when the abuse commenced in the Wyoming County trial, in the grand jury, and to investigators.  The trial revealed that her claims were not accurate.  How is the Court supposed to evaluate the admissibility of this evidence if the government cannot even pinpoint a start date of the abuse?

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FRE 403. Here, it is unclear how long the government plans to harp on this evidence during the direct examination of the Alleged Victim. It also is unclear how many other witnesses the government may call in its case in chief or in rebuttal to present this evidence. These unknowns present concerns that will cause Mr. Turnquist "unfair prejudice" and will contribute to confusion, undue delay, a waste of time, and the presentation of cumulative evidence. For these reasons, the Court should exercise its power under FRE 403 to exclude and/or limit this evidence.

First, the Court should require the government to explain how long it plans to take to present this evidence through the Alleged Victim and what percentage of her testimony will be devoted to explaining these uncharged acts. In the event this evidence comprises a large percentage of testimony, then it is the position of the defense that such presentation creates a situation where presentation of this evidence, while probative, is substantially outweighed by unfair prejudice, confusion, waste of time, delay, and cumulative evidence. Thus, the Court should limit the government's presentation accordingly.

Second, in the event the government seeks to call multiple witnesses to discuss these uncharged acts, then the defense hereby objects to that course because presentation of witnesses on this subject, beyond the Alleged Victim, is cumulative, will delay trial, may confuse the jury, and result in "unfair prejudice" to the defendant. Here, it appears the government, in addition to the Alleged Victim, may call Minor 1, Amber Talarico, and Amanda Stromecki to present this evidence. The Court should not allow this. It should confine presentation of this evidence to one witness.

**B. Admissibility of the attempted sexual abuse of Minor 2.**

In its motion, the government alleges that the defendant engaged in "violent" and "sexually inappropriate interactions" with Minor 2 and that it desires to admit this evidence under FRE 413. The Court should deny this request. First, the government's notice is, once again,

inadequate – in the case of this witness, markedly deficient. Wholly absent from the government's motion is any explanation as to what specific acts it plans to introduce if evidence is admitted under FRE 413 involving Minor 2. Like before, the government points to "interview reports" provided to the defense in discovery, but the notice and motion neither identifies *which* reports contain this information nor provides a copy of these reports to the Court. For this very reason, the Court contacted the government and requested that prosecutors provide this information to the Court. To date, no specific information has been provided. As a result, the Court (and the defense) is left to guess what acts the government plans to introduce. The Court cannot perform its Rule 413 analysis without these facts.

Second, Rule 413 is specific – it permits introduction of other acts of "sexual assault" only. *See* FRE 413(a). Acts of "violence" do not meet the definition of "sexual assault" unless there is a sexual component to the act. *See* FRE 413(d). Similarly, "sexually inappropriate interactions" do not meet the definition of "sexual assault," either. Here, the government has provided no evidence or explanation regarding how the "violent" acts Mr. Turnquist allegedly perpetrated upon Minor 2 constitute "sexual assault." Likewise, the government has not explained or provided evidence regarding how the "sexually inappropriate interactions" Mr. Turnquist allegedly had with Minor 2 constitute "attempted" acts of "sexual assault" against Minor 2. Absent such evidence, these acts do not meet the definition of "sexual assault" under the rule and should not be admitted into evidence.

### C. Admissibility of the defendant's "viewing of erotica on the Internet" under FRE 413.

Viewing "erotica" on the internet does not constitute commission of an other act of "sexual assault" under FRE 413. Such activity, assuming it occurred, is not listed as a qualifying predicate offense under FRE 413(d). As such, the Court should deny the government's motion to admit this evidence pursuant to FRE 413.

### D. Admissibility of alleged sexual abuse of the Alleged Victim at other times not charged in the indictment pursuant to FRE 404(b).

In the alternative, the government seeks to admit evidence that the defendant sexually assaulted the Alleged Victim on uncharged occasions pursuant to FRE 404(b). The government seeks to admit this evidence to show the defendant's intent in transporting the Alleged Victim, his common plan and scheme of sexually assaulting the Alleged Victim, and his opportunity to commit the crimes charged in the indictment. *See* ECF 109 at 37.

The Second Circuit evaluates Rule 404(b) evidence under an "inclusionary approach" and allows evidence "for any purpose other than to show a defendant's criminal propensity." *United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992) (internal quotations omitted); *United States v. Tubol*, 191 F.3d 88, 95 (2d Cir. 1999). Courts may admit evidence of prior bad acts if the evidence "'is relevant to an issue at trial other than the defendant's character, and if the probative value of the evidence is not substantially outweighed by the risk of unfair prejudice.'" *Tubol*, 191 F.3d at 95 (quoting *United States v. Morrison*, 153 F.3d 34, 57 (2d Cir. 1998)). When determining whether to admit prior act evidence pursuant to Rule 404(b), courts consider whether: (1) the prior act evidence is offered for a proper purpose; (2) the evidence is relevant to a disputed issue; (3) the probative value of the prior act evidence is not substantially outweighed by the danger of unfair prejudice; and (4) the court can fashion and administer an appropriate limiting instruction. *See Huddleston v. United States*, 485 U.S. 681, 691-92, 99 L. Ed. 2d 771, 108 S. Ct. 1496 (1988); *Pitre*, 960 F.2d at 1119; *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002).

Regarding the government's theory that evidence of previous sexual assaults should be admitted to show the defendant's intent in transporting the Alleged Victim, the defense is cognizant of the case law cited by the government that purports to affirm admissibility under this theory. *See* ECF 109 at 36. Assuming that introduction of this evidence satisfies the first two

10

prongs of the *Huddleston* test, the defense is concerned that admission of this evidence does not meet the third and fourth prongs of the test.

Regarding the third prong, the defense believes that admission of this evidence is substantially outweighed by the danger of unfair prejudice. Of course, all evidence offered by the government is bound to be prejudicial to the accused; otherwise, the government would not be submitting it as evidence. *See, e.g., United States v. Candelaria-Silva*, 162 F.3d 698 ,705 (1st Cir. 1998). For this reason, *Huddleston* makes clear that in order to justify exclusion of prejudicial evidence, the prejudice must be *unfair. Id.* In order to constitute unfair prejudice, the evidence must cause, or lead, the fact-finder to base his or her decision on an improper basis. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997). Here, the defense believes that consideration of the uncharged assaults will cause the jury to determine Mr. Turnquist's guilt because of the uncharged acts alone rather than his intentions during the five trips charged in the indictment. Since the elements of the charged offenses do not require proof that sexual activity actually occurred on the trip, but, instead, just that one of the dominant, significant, or motivating purposes of the trip was for Mr. Turnquist to engage or attempt to engage in such activity with the Alleged Victim on the trip, the concern is that introduction of this evidence will improperly cause the jury to convict Mr. Turnquist on what the jury believed occurred in New York. This would constitute an improper basis of conviction. For this reason, the evidence should be excluded.

Regarding the fourth prong, the defense does not believe that the Court can craft an adequate instruction to prevent the jury from deciding the case on this improper basis. This is because of the emotional nature of the charges as well as recent history which encourages persons to "believe the victim" and, when such persons do not give such deference to the "victim," they are subject to public opprobrium. For this reason, the evidence should be excluded.

Finally, the defense has FRE 403 concerns. As articulated above, *see* Section III(A), *supra*, introduction of this evidence risks confusion, delay, waste of time, unfair prejudice, and presentation of cumulative evidence. The defense hereby incorporates those arguments as reasons to deny the government's motion or limit the admission of this evidence.

Regarding the government's theory of admissibility that the evidence should be introduced to demonstrate the defendant's common plan and scheme to assault the Alleged Victim, the defense believes that this theory fails the first prong of the *Huddleston* test. Under the facts, the government is offering this evidence to show (and argue) that Mr. Turnquist has the propensity to commit these acts. Stated another way, this evidence is being introduced to show that if Mr. Turnquist sexually assaulted the Alleged Victim in New York, then he must have wanted to do so on these trips because he has the propensity to assault the Alleged Victim. This is improper. Moreover, simply stating that the government's intention behind admitting this evidence is to show a "common plan and scheme" to assault the Alleged Victim is insufficient. The government may be using language from FRE 404(b) to justify admission on this basis, but the use of this language alone does not remove the true motivation for admitting this evidence – propensity. The Court should exclude this evidence on that basis.

In addition, the Court should not permit this evidence to be introduced under this theory because it does not meet the definition of a "common plan or scheme." Evidence introduced on this basis is for the purpose of showing that the defendant engages in particular behavior and planning with one victim to commit the same crime on another victim. Here, the victim in New York is the same victim as the victim on these trips. On top of that, even under the government's theory and evidence, the defendant did not book interstate trips for the purpose of committing acts of sexual assault against the Alleged Victim in New York. As such, it is not proper to admit this evidence under the common plan or scheme theory.

Finally, the defense has the same FRE 403 concerns as articulated above, *see* Section III(A), *supra*, since introduction of this evidence risks confusion, delay, waste of time, unfair prejudice, and presentation of cumulative evidence.  The defense hereby incorporates those arguments as reasons to deny the government's motion or limit the admission of this evidence.

Regarding the "opportunity" theory articulated by the government, the defense believes that this theory is a similar red herring.  First, this theory fails the first prong of the *Huddleston* test because this evidence is being offered to show that Mr. Turnquist has the propensity to commit these acts alone.  Second, the "opportunity" theory does not fit into the facts.  Based on the government's own evidence, Mr. Turnquist allegedly had the opportunity to sexually assault the Alleged Victim in New York on a regular basis.  Thus, taking out-of-state trips did not provide the defendant the "opportunity" to sexually assault the Alleged Victim because he otherwise had the opportunity to do so at home in New York.  This is why this theory is irrelevant.  Third, Mr. Turnquist harbors the same FE 403 concerns articulated above.

### E.  Admissibility of violence against and the attempted sexual abuse of Minor 2.

The government seeks to introduce evidence that Mr. Turnquist allegedly was violent with Minor 2 and "inappropriately interacted" with Minor 2 to demonstrate 1) a common plan and scheme of "grooming" behavior, 2) a sexual attraction to minor females, and 3) the defendant's intent during the charged out-of-state trips.  *See* ECF 109 at 38.  The Court should deny the government's motion to admit this evidence.

As a threshold matter, the Court should determine that there is a notice issue because the government failed to adequately explain which acts of "violence" it is seeking to admit to permit the defense to respond to them and the Court to evaluate them.  Unless and until the government provides adequate notice, the Court should deny the governments motion *sua sponte*.

Secondarily, the purported acts of violence are not connected to any proper theory of admissibility under FRE 404(b). The acts of "violence" against Minor 2 – which to the best of the defense's ability to guess involve acts of parental discipline while Minor 2 was a member of Mr. Turnquist's household – are not connected to a common plan or scheme involving grooming, sexual attraction to minor females, or the defendant's intent on out of state trips with the Alleged Victim. For example, based on recent filings, the government's theory is that Mr. Turnquist was violent with the Alleged Victim to prevent her from disclosing sexual abuse *after the acts occurred*; but here, the government's theory is that Mr. Turnquist engaged in violence to consummate sexual acts with Minor 2 *before the acts occurred*. These theories are not the same. Furthermore, the "violence" purportedly committed against Minor 2 was not completed to get Minor 2 to go on an out-of-state trip to facilitate the defendant's sexual assault of Minor 2. This theory also is dissimilar to the one advanced involving the Alleged Victim. Consequently, this evidence fails the first two prongs of the *Huddleston* test.

This evidence also fails the third prong of the *Huddleston* test. As set forth above, the probative value of this evidence is low – it has little bearing and relevance on the issues involving the Alleged Victim – and the danger of unfair prejudice, confusion, delay, and waste of time is, as a result, substantially high. Admission of this evidence will simply paint Mr. Turnquist as a "bad guy." This is exactly the type of improper character evidence FRE 404 seeks to exclude.

Lastly, this Court has a gatekeeping function to perform that should result in this evidence being excluded. Under FRE 104(b), the Court, as a threshold matter, must determine whether a jury could find that the purported acts against Minor 2 did occur. As *Huddleston* explains,

> In determining whether the Government has introduced sufficient evidence to meet Rule 104(b), the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence. The court simply examines all the evidence in the case and decides whether the jury could

14

>  reasonably find the conditional fact...by a preponderance of the evidence.

*Huddleston*, 485 U.S. at 690.  The defense has concerns that the evidence the government seeks to admit here does not meet this bar.  All of the evidence involving Minor 2 is contested.  In fact, in one of the police reports, Minor 2 is confronted with evidence that she was not truthful about her allegations and, in response, she declines to participate any further with police and the investigation is closed.  On top of that, the defense recently became aware of evidence that Minor 2 was involuntarily committed for a mental health crisis.  Such evidence has bearing on this Court's decision to admit this evidence.

The notice regarding Minor 2 is inadequate.  It is not the job of the defense (or the Court) to hypothesize which acts of "violence" or "inappropriate interactions" constitute the FRE 404(b) evidence that the government seeks to introduce.  As such, the defense reserves the right to supplement this objection when the government discloses information regarding the Minor 2 allegations to the Court.  Until that happens, though, the Court should exclude this evidence.

### F. Admissibility of viewing of erotica under FRE 404(b).

The government seeks to admit evidence that a computer found in Mr. Turnquist's home accessed "erotica" that purportedly involved "Taboo-Incest" in May 2013 under FRE 404(b) to show 1) the defendant's sexual intent while travelling with the Alleged Victim and 2) the defendant's sexual interest in minor female family members.  *See* ECF 109 at 30, 38-39.  This evidence should be excluded for failing to meet the *Huddleston* criteria.

Regarding the first prong, one of the government's theories of admissibility is to use this evidence show the defendant's sexual interest in minor female family members.  This theory constitutes propensity evidence. Period.  As this theory does not constitute a permissible purpose under FRE 404(b), this evidence should be excluded on this theory.  The other theory of

admissibility is that this evidence shows the defendant's sexual intent during the trips charged in the indictment. The defense takes issue with this theory because the "erotica" evidence does not contain a member of the defendant's family and, as a result, is not similar to the charged conduct to become relevant. That said, this theory may pass the first two progs of the test. However, even if it does, further analysis reveals how this theory fails the remaining prongs of the test.

The third prong of the *Huddleston* test requires that the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice, confusion, delay, and waste of time. The government fails this prong. Importantly, under FRE 104(b), the Court must determine that the trier-of-fact could find by a preponderance that the defendant committed this act. Here, the government has not introduced sufficient evidence to meet this bar. For example, Mr. Turnquist lived in a residence with multiple persons who all had access to the seized computer. The government's theory is that Mr. Turnquist viewed this "erotica," but prosecutors provide no evidence to prove this connection. This failure makes the government's theory, that it was Mr. Turnquist who accessed this "erotica," nothing more than a guess. A "guess" does not meet the preponderance standard. As a result, the danger of unfair prejudice against the defendant as well as confusion, delay, and waste of time substantially outweighs the probative value of the evidence. For the same reasons, the defense believes FRE 403 provides a reason to exclude this evidence as well.

Lastly, even assuming the premise of the government's theory is true, accessing one piece of "erotica" over the course of nearly a decade is not so indicative of intent that the probative value of the evidence is not outweighed by the danger of unfair prejudice. There is no evidence that this "erotica" constitutes child pornography. There is no evidence that this "erotica" is anything more than a fantasy theme, which is a prevalent storyline in pornography. And there is no evidence that this type of theme was repeatedly accessed in 2013 or at any other time. Importantly, law enforcement has searched multiple media devices purportedly possessed by Mr. Turnquist and these

searches have not revealed similar searches or access of similar erotica. Thus, access of this material, even if it was the defendant who viewed it, was a singular event. A singular event is not so indicative of intent as to make the probative value of this evidence so high that it is not substantially outweighed the danger of unfair prejudice (i.e., that a jury could improperly use this evidence as the means to convict the defendant of the charged crimes). For these reasons, this evidence should be excluded.

## Conclusion

For the reasons set forth above, the Court should deny the government's motion or enact limitations on the admissibility of this evidence.

Dated: June 15, 2022
      Williamsville, New York

**SINGER LEGAL PLLC**
*Attorneys for Defendant Nicholas Turnquist*

By:   s/ Robert C. Singer, Esq.
      Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com