IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                        21-CR-15

NICHOLAS TURNQUIST,

           Defendant.

---

## GOVERNMENT'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO PRECLUDE CELL PHONE EVIDENCE

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorneys, hereby submits this response in opposition to Defendant's Motion to Preclude Results of 6/23/2022 Cell Phone Search (the "Motion") (Dkt. 146) and the memorandum filed in support thereof (the "Memorandum") (Dkt. 146-1).

Defendant's Motion should be denied. The government obtained a search warrant for the cell phone at issue on June 23, 2022. FBI executed the search warrant on June 28, 2022. On July 2, 2022, the FBI found a probative text message exchange between the defendant and his girlfriend within the contents of the cell phone. *That same day* the government emailed the text message exchange to defense counsel. Moreover, defendant's investigator had performed his own search of the same cell phone weeks earlier, on June 3, 2022, and therefore the defendant already had access to the evidence he now claims the government should not be able use. As set forth below, Rule 16 and Second Circuit case law do not support defendant's request for preclusion and his Motion should be denied.

**APPLICABLE LAW**

Federal Rule of Criminal Procedure 16 imposes a continuing duty of production on the parties to a criminal case.  Specifically, Rule 16(c) provides:

> Continuing Duty to Disclose.  A party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if:
>
> > (1) the evidence or material is subject to discovery or inspection under this rule; and
> >
> > (2) the other party previously requested, or the court ordered, its production.

Thus, Rule 16 contemplates that as new discovery materials come into a party's possession, the party has an obligation to produce them, even "during trial."

For example, in *United States v. Rom*, 528 Fed. Appx. 24 (2d Cir. 2013), the Second Circuit held that the trial court properly admitted into evidence incriminating bank records that the government had provided to defendant only two days before trial started, but which the government itself had obtained only a day earlier.  The Second Circuit reasoned: "Neither Rule 16 nor Local Rule 16(h) bars the introduction of evidence that is discovered only shortly before or even during trial, but is promptly disclosed."  *Id.* at 26.  *See also United States v. Anna Steiner*, 19-cr-0295 (HG), 2022 WL 2390943, *2 (E.D.N.Y. July 1, 2022) ("The Second Circuit—even in cases where the government produces significant amounts of discovery shortly before trial—has found there is no Rule 16 violation so long as that evidence is 'promptly produced to defense counsel' and there is sufficient time to review the materials.").

Even where the government makes a late disclosure in violation of Rule 16(a), preclusion is appropriate only if the defendant can show "substantial prejudice." *See United States v. Salameh*, 152 F.3d 88, 130 (2d Cir. 1998) ("A district court's decision not to exclude evidence that was the subject of a Rule 16(a) violation is not grounds for reversal unless the violation caused the defendant 'substantial prejudice.'"). Notably, the Second Circuit interprets "substantial prejudice" to mean "the prejudice resulting from the government's untimely disclosure of evidence, rather than the prejudice attributable to the evidence itself." *United States v. Sanchez,* 912 F.2d 18, 23 (2d Cir. 1990). In addition, substantial prejudice "mean[s] more than that the statement was damaging to the defendant: the defendant must demonstrate that the untimely disclosure of the statement adversely affected some aspect of his trial strategy." *United States v. Adeniji*, 31 F.3d 58, 64 (2d Cir. 1994).

In *Adeniji*, for example, a federal agent testified during trial that the defendant made an admission acknowledging that jackets found in the defendant's garment bag which contained heroin were his. *Id.* at 61. The defendant moved to strike this testimony on the ground that the statement had not been disclosed pre-trial by the government pursuant to Rule 16(a). *Id.* at 64. The district court denied his request and the defendant was convicted. *Id.* On appeal, the defendant claimed the district court erred in admitting the agent's testimony regarding the defendant's statement that had not been disclosed pre-trial. *Id.* The Second Circuit rejected this argument and affirmed the conviction, finding that the defendant failed to show substantial prejudice: "Since Adeniji fails to identify any prejudice resulting from the disclosure of the statement at trial, his claim must fail." *Id.*

Similarly, in *United States v. Lee*, 834 F.3d 145 (2d Cir. 2018), a federal agent testified in the middle of trial regarding defendant's post-arrest statement that the government had not disclosed before trial. *Id.* at 158. The defendant objected to the statement, but the district court allowed the statement into evidence. *Id.* On appeal, the Second Circuit held that, even assuming Rule 16 was violated, the defendant could not show substantial prejudice because, among other things, the statement did not alter the defendant's theory of the case. *Id.* at 160.

Also instructive is *United States v. Cantoni*, 18-cr-562 (ENV), 2019 WL 1264899 (E.D.N.Y. March 19, 2019). In *Cantoni*, the government produced only 21 days before trial certain historical cell phone location records that placed the defendant at the scene of the charged robberies. The defendant moved to preclude the location records on the ground that they were produced in violation of Rule 16(a). *Id.* at *1. Even assuming the late disclosure violated Rule 16(a), the district court denied the defendant's motion because he had not shown substantial prejudice. Specifically, while the cell phone location records consisted of 847 pages, the government had isolated the 20 relevant pages to help the defendant review the disclosure expeditiously. *Id.* Furthermore, the defendant had been aware that the historical cell phone data existed, was retrievable, on notice that the data was likely to be an issue at trial, and could have hired his own expert to review cell phone data. *Id.* The court concluded:

> [Defendant's] principal concern is that evidence placing him within an approximately 49 square block zone mapped by the data that includes the location of each of the charged robberies will be incriminating and is supportive of his argument that this renders the government's purported discovery violation prejudicial. However, this represents, at best, prejudice resulting from the nature of the evidence rather than from the delay in disclosing it.

*Id.* at *2.

## ARGUMENT

### I.      The Government Complied With Fed. R. Crim. P. 16.

The government has complied with Rule 16.  As noted above, Rule 16(c) provides that a party who "discovers additional evidence or material before or during trial must promptly disclose its existence…." Fed. R. Crim. P. 16(c).  That is exactly what the government did here.  On June 23, 2022, the government obtained a search warrant for the cell phone at issue, a Samsung Galaxy S9, along with another cell phone taken from the defendant, a Samsung Galaxy S10.  The FBI executed the search warrant on June 28, 2022 and extracted data from the cell phones.  Though he did not retrieve it until July 3, 2022, the data was made available for defense counsel's pick up on July 1, 2022.

Four days after the search warrant's execution, on July 2, 2022, the FBI was reviewing the text messages extracted from the S9 cell phone and found an exchange between the defendant and his girlfriend dated February 6, 2019, that occurred between 1:47 a.m. and 2:48 a.m.  In the exchange, the defendant appears to admit to sexual contact with the victim in this case as early as 2012-2013.  FBI immediately informed the undersigned attorneys of the text message exchange, and the government produced the specific exchange by email to defense counsel that same day.  The next morning, on July 3, 2022, the government provided a thumb drive to defense counsel with the full cell phone extractions.  Thus, as in the *Rom* case cited above, in which the government promptly disclosed recently obtained bank records to defendant days before trial, the government here did exactly what Rule 16(c) requires. Consequently, there is no Rule 16 violation.

The fact that the FBI had seized the S9 cell phone in April 2020 and executed a search warrant on it then is beside the point. When the first search warrant was executed on April 7, 2020, the Cellebrite cell phone extraction software available at that time supported only a less comprehensive "file system" extraction. As a result, the April 2020 extraction obtained only 589 text data files. The June 2022 extraction utilized the latest Cellebrite software which supported a much more comprehensive "physical" extraction. As a result, the extraction obtained 13,658 text data files. That amount of data simply was not available to the government in April 2020.

Furthermore, while the defendant is correct to note that the Cellebrite software is routinely updated, it would be impractical for the government to obtain a new search warrant every single time Cellebrite updates its software. Instead, the government sought a new search warrant because (i) defense counsel asked the government to let his investigator examine the Samsung S9 and S10 cell phones because he believed his investigator's newer Cellebrite software would facilitate a more comprehensive extraction from the phones; (ii) upon the FBI making the cell phones available to the defendant's investigator on June 3, 2022, the defendant's investigator conducted an extraction with his updated Cellebrite software and told the FBI case agent how much data he extracted from the cell phones (which was more than the April 2020 extractions yielded);[1] and (iii) the government confirmed that the

---

[1] Defendant's suggestion that the conversation between the FBI agent and his investigator might have violated the work-product doctrine is meritless. The work-product doctrine is designed to "shelter the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). To that end, the work-product doctrine protects an attorney's "thought processes includ[ing] preparing legal theories, planning litigation strategies and trial tactics, and sifting through information." *In re Steinhardt Ptrs, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993). The brief conversation between the case agent and the defendant's investigator does not implicate these concerns. Moreover, if the conversation was somehow protected by the work-product doctrine, it was waived when defense counsel told the government why he sought to review the cell phones. "Case law is clear that 'once a party allows an adversary to share the

Cellebrite software had, in fact, been updated and that the latest version of the software was able to extract more cell phone data. In light of these facts, it was incumbent on the government to seek a new search warrant for the cell phones to ensure that it went to trial with the same cell phone data that the defendant possessed. Once the government obtained that additional data and reviewed it, the government immediately disclosed it to the defendant.

## II.      The Defendant Cannot Show Substantial Prejudice.

Even if there were a violation of Rule 16, which the government does not concede, preclusion would not be appropriate because the defendant cannot show substantial prejudice.

First, the defendant's investigator did his own extractions from the cell phones on June 3, 2022, and thus the defendant has had full access for weeks to the same cell phone data that he now seeks to preclude the government from using.

Second, while probative, the text message exchange, in which the defendant makes an admission to his then girlfriend, does not alter the theory of the government's case. Indeed, this admission is corroborative of the victim's anticipated testimony regarding the defendant's long-term sexual abuse of her and similar to another admission of the defendant that the government intends to introduce at trial, which was made during a controlled call the victim made to the defendant from the East Aurora Police Department. If any prejudice results from

---

otherwise privileged thought processes of counsel, the need for the privilege disappears.'" *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002) (quoting *Steinhardt Ptrs.*, 9 F.3d 230) (brackets omitted).

this evidence, it results only from the inculpatory nature of the defendant's admission, not from any delay in disclosure. *Cantoni*, 2019 WL 1264899 at *2.

Third, as in *Cantoni*, 2019 WL 1264899, the government did not simply give defendant the whole cell phone extraction, but isolated from the cell phone extraction the specific text message exchange that it seeks to offer as evidence. The text message exchange itself is brief, occurring over the course of an hour on a single day in February 2019, and the whole text exchange can be read in five minutes. For these reasons, the defendant cannot show substantial prejudice from the government's disclosure.

## CONCLUSION

The government respectfully requests that the defendant's Motion be denied.

DATED:  Buffalo, New York, July 5, 2022.

Respectfully submitted,

TRINI E. ROSS
United States Attorney

BY:     *S/ MAEVE E. HUGGINS*
        _____
        MAEVE E. HUGGINS
        Assistant U.S. Attorney
        United States Attorney's Office
        Western District of New York
        138 Delaware Avenue
        Buffalo, New York 14202
        (716) 843-5872
        Maeve.Huggins@usdoj.gov

BY:

**_S/ PAUL E. BONANNO_**

_____

PAUL E. BONANNO
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5873
Paul.Bonanno@usdoj.gov